EDWARDS BROS. v. EDWIN ERWIN AND ·J. M. PIPER.*

(Filed 14 October, 1908.)

**1. Evidence—Telegrams.**

When telegrams are introduced in evidence from one party to the suit to the other, telegrams from the other party, received under circumstances clearly indicating they are replies, can be introduced by the same party without further proof, when they are relevant to the inquiry.

**2. Same—Harmless Error.**

When of a series of telegrams one is admitted in evidence as received in reply to those sent by the party offering them, and it does not appear to have any connection with the others and has no bearing upon the facts at issue, it is harmless error.

**3. Judgment—Evidence—Nonsuit—Substantial Damages—Instructions.**

When plaintiff has alleged and proved facts which, at least, entitle him to recover nominal damages arising from a breach of contract, a motion as of nonsuit upon the evidence will not be sustained upon the theory that no substantial damages have been shown. The question as to a substantial recovery must be raised by a prayer for instruction.

**4. Judgments—Evidence—Nonsuit—Collateral Matters.**

A motion as of nonsuit upon the evidence should not be directed to collateral matters, and thereunder the defendant cannot successfully contend that plaintiff obtained a warrant of attachment, alleging a breach of contract, and then complained and laid his proof in tort.

ACTION tried before *Lyon, J.,* and a jury, at Fall Term, 1908, of WILSON.

*CONNOR, J.,* did not sit on the hearing of this case.

This is an action brought by the plaintiffs to recover damages of the defendants. The plaintiffs alleged, and introduced evidence to prove, that in November, 1902, they purchased of the defendants a car load of horses and mules at the stock yard of the defendants in Fort Scott, Kansas, and gave in payment their sight draft for the amount of the purchase price on S. A. Woodard, of Wilson. This draft was accepted by the defendants in payment for the said stock, and the stock was thereupon shipped from Fort Scott to Wilson *via* Atlanta, Georgia. The plaintiffs had been dealing with the defendants for several years and had purchased from them several car loads of stock, giving in payment therefor sight drafts on S. A. Woodard. These drafts had always been paid on presentation. S. A. Woodard was solvent. The usual time taken for such shipments from Fort Scott to Wilson was about seven days. The horses and mules were detained in Atlanta, by the unlawful action of the defendants, for six days. When they arrived in Wilson they were in bad condition, had a disease known as pink eyes, were bruised and had coughs and colds. The plaintiffs alleged that they were damaged in a large sum by reason of their detention.

The defense of the defendants was that the stock was purchased from a corporation of which the defendants were members, and if the plaintiffs had any cause of action on account of the detention of the stock it was against the corporation and not against the defendants as individuals.

The evidence of the plaintiffs tended to show that they purchased the stock from the defendants as partners and not as a corporation. The jury, in response to the issues, found the facts to be that the plaintiffs purchased the stock of the defendants as members of a firm doing business under the name of Erwin-Piper Horse and Mule Company and not as a corporation; that the defendants unlawfully and without cause ordered the car load of stock to be stopped at Atlanta; that the stock was damaged by reason of being stopped, and

that the plaintiffs sustained the damage assessed by reason of the stopping of the live stock in Atlanta.

For the purpose of establishing the fact that the stock was unlawfully and wrongfully stopped by the defendants, the plaintiffs offered in evidence three telegrams from the defendants. The telegrams were admitted in evidence, and the defendants excepted.

· The testimony tended to establish the fact that the second and third telegrams were sent in response to telegrams of the plaintiffs to the defendants, at Fort Scott, Kansas, and to Edwin Erwin, one of the defendants, at Atlanta, Georgia.

At the close of the testimony the defendants moved to nonsuit the plaintiffs. The motion was overruled and the defendants excepted. There was a verdict for the plaintiffs. A motion for a new trial by the defendants was overruled and judgment entered on the verdict. Defendants excepted and appealed.

*F. A. Woodard* for plaintiffs.
*Connor & Connor* for defendants.

WALKER, J., after stating the case: The defendants objected to the introduction of the telegrams, upon the ground that there was no evidence they had been sent to them by the plaintiffs. The last two telegrams purported to be in reply to telegrams sent by the plaintiffs to the defendants, and were received at a time and under such circumstances as clearly to indicate that they were so sent. They tended to show that the defendants had stopped the horses and mules, *in transitu,* at Atlanta. The authorities sustain the ruling of the court by which the telegrams were admitted. "A further exception to the rule requiring proof of handwriting has been admitted in the case of letters received in reply to others proved to have been sent to the party. Thus, where the plaintiff's attorney wrote a letter, addressed to the defendant at his residence, and sent it by the post, to which he received a

reply purporting to be from the defendant, it was held that the letter thus received was admissible in evidence, without proof of the defendant's handwriting, and that letters of an earlier date in the same handwriting might also be read, without other proof." 1 Greenleaf on Evidence (16th Ed.), sec. 575c. The principle thus stated has been extended to telegrams. *Taylor v. Steamer Robert Campbell,* 20 Mo., 254. "The courts have likened telegrams to letters, and held that purported answers are admissible as *prima facie* evidence. It is well settled that when a letter is received, in due course of mail, purporting to be in response to a letter previously sent by the receiver, it is presumptively genuine and admissible. The principle upon which these cases rest is that there is a presumption that those in charge of receiving and transmitting mail perform the duties entrusted to them, and this, coupled with the facts that the letter received, on its face, purports to be a reply to the one sent, and comes from the source from which it might be expected, raises a just inference that it is in fact a reply. We see no good reason why this same presumption of the performance of duty should not obtain as to the employees of a telegraph company. A large portion of the business of the country is transacted through the medium of such agencies, and, while it is true that mistakes sometimes occur, it is also true that the postal service is not infallible. It was held in *Com. v. Jeffries,* 7 Allen, 556, that there is a presumption that when a telegram has been delivered to the telegraph company and accepted by the operator for transmission it is duly forwarded and received by the addressee. "If the presumption obtains, what is to be inferred from the receipt of an answer to such a communication? Is it any less strong than the receipt of an answer by mail to a letter? We think it is no stretch to say that a presumption arises that such answer was in either case sent by the original addressee," citing *Armstrong v. Thresher Co.,* 5 S. D., 12; *Bank v. Geishardt,*

55 Neb., 232; *Melby v. Osborne,* 33 Minn., 492; 1 Greenleaf Ev., sec. 573a; 3 Wharton Ev., sec. 1328. The court admitted the last two telegrams. As to the first telegram, when considered in connection with the other two, it appears to be but a part of one and the same correspondence. But if this circumstance be not sufficient to let it in, its contents are not of such a character as to warrant the granting of a new trial. It merely states what the defendants might do in a given contingency, and if it was incompetent the error in admitting it was harmless. The other messages showed that the horses and mules had been stopped at Atlanta, and the last one was sent from that place by one of the defendants.

The defendants moved to nonsuit the plaintiffs at the close of the testimony because of the absence of evidence to show that the damage to the horses and mules was caused by the defendants' act in stopping them at Atlanta. If the defendants committed a wrong to the plaintiffs by stopping the horses and mules at Atlanta, the plaintiffs were entitled, at least, to nominal damages. · *Chaffin v. Manufacturing Co.,* 135 N. C., 95. The *quantum* of damages, beyond those which are nominal, must be determined by the jury, under proper instructions from the court, and is not involved in a motion to nonsuit. The latter motion is addressed always to the evidence of the cause of action, which is complete when the plaintiff has alleged and shown facts upon which he is entitled to nominal damages. Any question as to the right of the plaintiffs to recover substantial damages must be raised by a prayer for instructions.

The defendants also contended that the plaintiffs, in their affidavit for an attachment, had alleged a breach of contract, and by the testimony had shown a tort. If there is any such variance, advantage cannot be taken of it by a motion to nonsuit. It was a proper subject, perhaps, for a special instruction to the jury upon an issue framed with a view to

148—28

ascertain the legal character of the particular wrong, so that the court, upon the finding of the jury, could render judgment accordingly. It is, though, enough to say that the question cannot be raised by a motion to nonsuit, which, as we have already stated, is directed to the proof of the cause of action and not to collateral matters, such as ancillary proceedings, or to the question as to the amount of the damages to which the plaintiff may be entitled.

No Error.