G. B. WOODY v. CAROLINA SPRUCE COMPANY.

(Filed 15 May, 1918.)

1. **Evidence—Letters.**

For a letter to be competent evidence in an action, there must be testimony as to the genuineness of the signature thereto, and the authority of the writer for sending it, so that it may be shown that it was not the act of a stranger; and where the evidence is only that a letter had been received, but was destroyed with the name of the president of the defendant corporation appearing as the writer, but of this the witness was not quite sure, and there being no proof of the genuineness of the signature, it is insufficient to admit testimony of its contents bearing adversely to the contentions of the defendant.

35—175

**2. Appeal and Error—Letters—Evidence—Reversible Error.**

　　Where an employee sued his employer to recover damages arising from malpractice of a physician alleged to have been employed by the company to attend him, which employment the defendant denied by its pleading and evidence, the erroneous admission of a letter claimed to have been written by the defendant's president, which tends to contradict the defendant's evidence, is not harmless but reversible error.

ACTION, tried before *Ferguson, J.,* and a jury, at Fall Term, 1917, of YANCEY.

The plaintiff sought to recover damages for an injury to his arm while he was in the service of the defendant and under the treatment of its surgeon, as plaintiff alleged. Defendant denied that the surgeon had been employed by it. In order to prove his allegation that the surgeon was employed by defendant, plaintiff introduced a letter which, he alleged, was signed by C. S. Aldrich, president and general manager of defendant, and received by Milt Dellinger, one of defendant's employees, who testified that it had been destroyed, and that he thought C. S. Aldrich's name was at the bottom of it, but he was not sure. It came to him in the mail. The letter stated that "if we (employees) did not pay the doctor's bill, we had to leave the job." It was written on a letter-head of the Carolina Spruce Company, its name at the top and C. S. Aldrich at the bottom. Dr. C. S. Aldrich testified that he did not write such a letter, or authorize any one else to write it, and it was not his letter, and that Dr. Smith was not employed by the company or connected with it, and that he never discharged any employee for failure to pay a doctor's fee nor authorized any one to do so. The relevency of this letter as evidence, if it is competent, will appear by the statement that plaintiff claimed that Dr. Smith was defendant's surgeon, and, as such, attended him when his arm was broken, and negligently failed to treat it properly or with reasonable surgical skill; while defendant alleged that Dr. Smith had not been so employed by it, and was not its surgeon, but that he was the surgeon of the employees only, who paid him by the month, the defendant, by consent of the parties, merely having agreed to retain the amount due by the employees from their wages and pay it to the doctor for them, and that the defendant had no other interest in the matter.

The court admitted the letter, and defendant excepted. There was another exception, which is stated in the opinion of the Court. Verdict assessing damages for the plaintiff at $3,500, and from the judgment thereon the defendant appealed.

*G. E. Gardner and Hudgins, Watson & Watson for plaintiff.*
*Pless & Winborne for defendant.*

WALKER, J., after stating the case: It is perfectly evident from a reading of the case that the witness Milt Dellinger did not know who had written the letter except by his inference from what he saw on its face, which he imperfectly and doubtfully recalled, the letter having been lost or destroyed. What he stated that he saw was not sufficient to authenticate the letter or to fix the defendant, through its president, as the author of it. The general rule as to the proof of the genuineness of a letter or telegram and its admissibility as evidence is thus stated in 25 Enc. of Law, at p. 876: "Ordinarily the general rule of law relative to the admission of letters in evidence apply to telegrams. A telegram is not admissible as evidence in the absence of proof of the handwriting where the original message is offered, or of other evidence of its genuineness."

This statement of the law is approved in *Reynolds v. Hinrichs*, 94 N. W. Rep., 694, which cites *Burt v. Winona R. R. Co.*, 31 Minn., 472. To the same effect is *Adams v. Lumber Co.*, 32 Minn., 216. It is held in those cases that a letter or telegram does not necessarily prove itself, and that there must be some evidence of the handwriting of the person whose name is signed to it, or some other proof of his signature to the letter, or of his authority for the sending of it, or other proof of its genuineness, and that without such proof there is nothing to show that it was not the act of a stranger. Any other rule might open wide the door to fraud and imposition. Lockhart on Evidence says, at section 96: "Before letters are admissible in evidence there must be some proof that they are genuine. They may be identified by the writer, the handwriting of the writer may be proved, etc., but some satisfactory proof of their authenticity is absolutely essential," citing *McLeod v. Bullard*, 84 N. C., 515; *Michael v. Foil*, 100 N. C., 178; *Rencher v. Aycock*, 104 N. C., 144; *Trust Co. v. Benbow*, 135 N. C., 303; *Edwards v. Erwin*, 148 N. C., 429.

We held in *Tyson v. Joyner*, 139 N. C., 69, that the introduction of a note with the name of a party endorsed on it is no evidence by itself that he endorsed it, which was approved in *Bank v. Drug Co.*, 152 N. C., 142; *Worth Co. v. Feed Co.*, 172 N. C., at p. 342; *Midgette v. Basnight*, 173 N. C., 18; *Moon v. Simpson*, 170 N. C., 335. There must be proof of the handwriting or other evidence of its genuineness. It was not shown here that the letter in question was part of a correspondence between Dellinger and Aldrich or that it was a reply to a letter from Dellinger, nor is there any circumstance of sufficient probative force shown to make even a prima facie case of its authenticity. It was just assumed that Aldrich sent it because his name was subscribed to it, which he testified was not his signature, and there is other evidence to show that it is not.

The plaintiff contends that the letter was harmless, if incompetent, but we do not agree with him. There was positive testimony to the effect that Dr. Smith had not been employed by the defendant, and that the latter was not responsible for his acts. The contents of the letter tended to show that he was not dealing independently with the employees, as contended by the defendant, but that he was in the defendant's employ, as if the letter is genuine it showed defendant's interest in having the money paid to Dr. Smith, and that it was not merely a stakeholder, as between the parties, or only an intermediary. It was introduced, of course, for that reason, and must have had much weight with the jury. When properly considered, it was a strong piece of evidence, if not the strongest the plaintiff introduced, and notwithstanding the positive statement of Dr. Smith that he was not employed by defendant, and of Aldrich that the doctor had no connection whatever with the company, it undoubtedly contributed to the result, which was contrary to the direct and positive testimony of these witnesses. It may be that the verdict is correct, but we cannot know whether it is or not when it was allowed to be influenced by incompetent evidence. It would appear that plaintiff thought it was valuable evidence to contradict defendant's version of the business connection between it and the surgeon, and it was stated here, without contradiction, that it was so used in the discussion before the jury.

The two cases (*Phillips v. R. R.*, 17 L. R. Anno. (N. S.), 1175, and *Nations v. Lumber Co.*, 48 L. R. Anno. (N. S.), 535) cited by the plaintiff as showing that the letter was harmless are very different in their facts from this case. In both of them there was no dispute as to the employment of the surgeon by the defendants and the question was as to the extent of the company's liability for their acts. In one of them the surgeon was specially employed by the defendant, and in the other he was employed in a hospital owned by the defendant. Collecting the fees monthly by the company, in each of those cases, was only a method of reimbursing itself for the salary or compensation it was bound by its contract to pay the surgeon. The contract in the *Nations case,* as the Court says, showed that "beyond making the weekly contribution, the employees took no part in procuring medical aid. The company retained that function in its own hands." In the other case it was clear that the company also retained that function, as it owned the hospital in which the doctor was employed. Those two cases were like *Guy v. Lanark Fuel Co.*, 48 L. R. A. (W. Va.), 536, where it is said in the first head-note: "A master who employs a physician to treat his employees, and collects small monthly fees from their wages, all of which he turns over to the physician as his compensation, is not liable for the physician's malpractice unless he is negligent in selecting or-

retaining him." And in the option, at page 538: "To entitle plaintiff to recover, it is necessary to prove two things: (1) That the malpractice of Dr. Nelson was the proximate cause of her injury; and (2) that defendant was negligent in selecting and in retaining him. Defendant was under no legal obligation to provide a physician and surgeon for its employees; but having assumed to do so, it was bound to exercise reasonable care to select a competent and skillful one."

In our case the question relates solely to the employment of the physician, and not to the company's liability for his acts. The case, therefore, is within the rule we have stated and which was applied by this Court to facts similar to those in this case in *Beard v. R. R.* 143 N. C., 140, where it is said: "Among other testimony regarding the discharge of plaintiff, defendant proposed to introduce two letters purporting to be signed by the plaintiff which he denied writing or sending. Defendant's witness, assistant superintendent, testified 'that he received in due course through the mail the letter,' etc. The letter was upon plaintiff's objection excluded. We concur with his Honor's ruling in this respect. While it is well settled that where it is shown that a letter was addressed, stamped, and mailed, there is a presumption that it was received by the addressee, it cannot be that the receipt of a letter purporting to be signed by a person is any evidence that it was written by such person. No authorities are cited to sustain the exception." See, also, *Foushee v. Owen,* 122 N. C., 360.

There is another exception, which need not be considered as it may not be again presented.

New trial.