LOUISE BUTLER, ADMINISTRATRIX OF THE ESTATE OF WILLIAM BUTLER, DECEASED, v. CAROLINA POWER & LIGHT COMPANY.

(Filed 18 September, 1940.)

**1. Evidence § 42b—**

The evidence disclosed that intestate was sawing limbs from a tree through which ran high powered wires from which the insulation had been worn, and that sparks of electricity were seen in the branches near plaintiff. *Held:* Warnings called out to intestate by bystanders are competent as being within the *res gestœ.*

**2. Nuisance § 1—**

While a nuisance may exist irrespective of any act of negligence, and a party injured thereby may recover the damages sustained, where the condition complained of arises solely by reason of alleged negligence, the gravamen of the action is negligence and the failure to submit an issue as to the existence of a nuisance is not error.

**3. Electricity § 7—In this action to recover for death of intestate caused by electrocution, refusal to submit issue of nuisance was not error.**

The evidence tended to show that defendant power company maintained high tension wires through a tree in proximity to the house in which intestate lived, that the wires rubbed against limbs of the tree so that the insulation had been worn off, and that for a long period before the accident in suit sparks of electricity were seen in and about the branches of the tree, that intestate climbed the tree to saw off limbs which were rubbing against the house, and was electrocuted. *Held:* The refusal of

the trial court to submit an issue tendered by plaintiff as to defendant's operation and maintenance of a nuisance is without error, and the judgment for defendant, entered upon the jury's negative finding to the issue of negligence, is upheld.

**4. Actions § 5—**

The distinction between forms of actions has been abolished, and the right to recovery will be determined in accordance with the factual situation established by the evidence, and not by the technical label applied by plaintiff to the cause alleged.

Appeal by plaintiff from *Warlick, J.,* at June Term, 1940, of Buncombe. No error.

This appeal is for recovery of damages for the negligent injury and death of William Butler, intestate husband of the plaintiff administratrix.

The plaintiff complained that the defendant company, a producer of electric current for power and light, operated a series of electric circuits along and over a certain street in the city of Asheville, and, in the operation and conduct of its business, maintained wires carrying currents of high voltage and great strength; that the defendant company had carried several high tension wires from pole to pole through a tree in or near the home of plaintiff's intestate; that these wires were not properly insulated and had become interlaced with the growing limbs and foliage of a tree adjacent to the home of said intestate to such an extent that at times the wires contacted the limbs of the tree and the current of electricity was diverted from the wire containing it through the limbs and foliage.

The wrongful conduct of the defendant is set up in two ways in the complaint: (a) "That the defendant company constructed and maintained its said electric circuits along and over Grail Street and negligently allowed its conductor or wires, without being properly protected, to be and remain in contact with the limbs of a maple tree at the home of plaintiff's intestate, the said wires being high tension or primary wires carrying 4,400 volts of electric current, which was sufficient to cause instant death to a person coming in contact therewith." The allegations of negligence are pleaded and repeated in several similar paragraphs. (b) That the defendant company negligently constructed and maintained its high voltage primary electric current and operated the same along and over Grail Street, through a thickly populated section of the city, traveled by many people, in such a way "as to constitute said wires a public or private nuisance"; and that, by reason of carelessly permitting the circuit to become grounded in the maple tree and through its limbs in contact with the residence of plaintiff's intestate, the company had created and maintained "a veritable death trap and nuisance,

which was the source of great potential danger to life and property";
but that the defendant "gave its assurance that the condition in and
around said tree entailed no danger."

It is further alleged that on 3 May, 1938, plaintiff's intestate, in
attempting to remove the nuisance created by the limbs of the said
maple tree, which were growing and rubbing against the house, climbed
up the tree, sawed off many of the offending limbs on the side of the tree
next the house; that he was unaware of the presence of the "subtle and
invisible deadly energy · of 4,400 volts of primary electrical current"
which said defendant had negligently, carelessly, and without any warn-
ing, permitted to remain against the limbs of said tree, with the result
that plaintiff's intestate came in contact with the said current and was
instantly "electrocuted and killed."·

The defendant denied the principal allegations of the complaint, and
pleaded contributory negligence.

The evidence of the plaintiff disclosed the death of William Butler
after he had climbed the tree through which the wires passed, and had
been there some time, first in the morning and again in the afternoon,
sawing off and removing limbs from the tree on the side next the house.

One witness for the plaintiff testified that she saw William in the
tree "and he was on fire when I saw him. A light was all around him
flashing sparkles and roaring. A few minutes after that he fell. . . .
I saw him in the tree with the sparks and light about a minute or two
before he fell out. He didn't stay in there long. . . . I had ob-
served peculiar things going on in that tree before Butler got killed, even
before he moved I saw sparkles. . . . I observed the tree sparkling
from time to time. It would sparkle more when it was damp and the
wind would blow than any other time. . . . That condition had been
going on there the summer before he got killed." This witness stated
that Butler occupied a front room of her house near the tree, and had
gotten permission from her to climb the tree and cut the limbs. She
described the condition in the tree as a nuisance.

One witness for the plaintiff described the burned condition of the
body. Another witness for the plaintiff described the operation of Butler
in the tree and the manner of his death. She saw him standing in the
forks of the maple tree and stated that he had been cutting off the limb
that was rubbing against the house. She did not see him as he fell, but
did see him as a flash of electricity came down the wire and caught him.

There was further expert evidence on the part of the plaintiff with
regard to the manner in which the wires were strung through the trees,
in noncompliance with the setup required in certain codes and ordinances
of the city of Asheville, and with safety provisions provided by the
National Board of Fire Underwriters, and departure of the methods

used from those demanded by considerations of safety and good practice.

The defendant introduced evidence relating to the circumstances attending the electrocution of the plaintiff's intestate while attempting to abate the so-called nuisance.

Eva Lewis testified, amongst other things, that she was sitting in a position where she could see the tree and Bill (Butler) sitting in it. She said that he had a hatchet in his hand and she "hollered" to him, advising him that it was getting dark and that he had better come down. He said, "I will in a few minutes." She called to Adolphus Clownie, who was on the other side, to get his grandchild from under those wires as she noticed them shaking terribly; that it was about five minutes before the flash occurred. Butler hollered to the child: "Get out from under those wires before you get killed." Witness ran down the street, got the child and brought him up on her porch. As she reached the porch she heard a noise and looked back and saw Butler "all inflamed."

Nathaniel McHaffey, witness for the defendant, testified that he saw William Butler up in the tree cutting a limb and about that time saw a spark of electricity. The witness hollered to Butler and told him that he had better come down, "that he wasn't a electricity man." . . . "Just then a spark of electricity came. He blew at it with his breath. It went out. He hollered back, 'Who said I wasn't a electricity man?' " This witness testified that Ray Lyles also hollered at Butler. Shortly after there were flames all around his elbow and shoulder, and he fell out of the tree.

Ray Lyles testified that McHaffey hollered up in the tree and told Butler he had better come down. "When Nathaniel hollered at him and told him he better come down, electricity was sparkling in the tree, and he started blowing at it with his breath. It went out, then he hollered back and said, 'Who say I wasn't a electricity man.' Then I saw a spark again. . . . I hollered then to him and told him he better come down out of the tree."

Adolphus Clownie also testified that he said to Butler: "The wires have begin to spit fire, you don't know what the danger is up there." Bill replied: "That's all right. I haven't got but a little more; I can get it down." "When the fire began to sparkle where the trunk of the tree goes up, I told him to come down, the tree was dangerous." This witness also testified that at that time twenty-five or thirty children, some on the school hill, some on the church hill, kept hollering and said: "Mr. Bill, you come down out of that tree, you are going to get killed." But "he chopped right on, said, 'No, no, I am not going to get killed.' " This witness testified that the limb upon which Butler was at work had not been quite sawed through and that Butler had begun to prize at the limb with a board which had been handed to him, one foot placed against

the trunk of the tree and the other against a large limb on the other side, and that he got overbalanced; that he threw his arm up and his left elbow got caught in the wires. At the time he was striking where the wires were coming through the trees; that he pressed the wires up against the tree, striking where the trunk of the tree goes up, sparkling fire there, and then the witness saw fire flame from where he was. This fire was close to him, about two feet or 18 inches.

There was much more evidence of the same sort, which it would be tedious to recount.

The defendant made a motion for judgment as of nonsuit at the conclusion of the plaintiff's evidence, which motion was declined.

The plaintiff tendered the following issues: "(1) Was the plaintiff's intestate, William Butler, injured and killed by the negligence of the defendant, as alleged in the complaint? Answer: ...........

"(2) Did the plaintiff's intestate, William Butler, by his own negligence, contribute to his injury and death, as alleged in the answer? Answer: ...........

"(3) Did the defendant, Carolina Power & Light Company, equip or maintain and operate its electric wires in the vicinity where plaintiff's intestate was injured and killed in such a manner as to constitute a nuisance? Answer: ...........

"(4) What damage, if any, is the plaintiff entitled to recover of the defendant? Answer: ..........."

The court declined to submit the issues as tendered and submitted the following issues:

"1. Was the plaintiff's intestate, William Butler, injured and killed by the negligence of the defendant, as alleged in the complaint? Answer: ..........

"2. Did the plaintiff's intestate, William Butler, by his own negligence, contribute to his injury and death, as alleged in the answer? Answer: ...........

"3. What damages, if any, is the plaintiff entitled to recover of the defendant? Answer: ..........."

The first issue as to negligence was answered in favor of the defendant. From the judgment thereupon rendered by the judge of the county court trying the case plaintiff appealed to the Superior Court of Buncombe County. There the matter was heard before Judge Warlick, who overruled the objections and exceptions of the plaintiff and affirmed the judgment of the county court. From this judgment the plaintiff appealed to this Court, assigning errors.

*George F. Meadows* and *John C. Cheesborough for plaintiff, appellant.*
*A. Y. Arledge, R. F. Phillips,* and *Harkins, Van Winkle & Walton for defendant, appellee.*

---

BUTLER *v.* LIGHT CO.

---

SEAWELL, J.   We pretermit discussion of the objections and exceptions to the admission and exclusion of evidence, since they do not disclose reversible error.   Mostly, they relate to warnings which were given to the plaintiff's intestate while he was in the tree and are, therefore, within the *res gestæ.   Harrill v. R. R.,* 132 N. C., 655, 44 S. E., 109.

But the plaintiff contends strongly that the trial court—the general county court of Buncombe County—committed error in declining to submit the tendered issue as to the creation and maintenance of a dangerous nuisance, by reason of which, it is contended, plaintiff's intestate lost his life.   Counsel on that side say that the evidence supports the theory advanced in the pleading that there existed such a nuisance separate and apart from any mere question of negligence; and the issue confining the investigation to the negligence of the defendant did not lead to an affirmance or a disaffirmance of the wrongful conduct of defendant in the creation and maintenance of the nuisance, from which it is contended the death of plaintiff's intestate resulted.

Admittedly there may be nuisances which do not involve negligence and which may be the cause of actionable injury and damage; 45 C. J., 634; 46 C. J., 663.   Distinctions involving a recognition of this principle are the subject of discussion in *Swinson v. Realty Co.,* 200 N. C., 276, 156 S. E., 545, and *Godfrey v. Power Co.,* 190 N. C., 24, 128 S. E., 485, and numerous cases which may be cited from other courts.   The philosophic discussion of the matter in these authorities must serve to supplement our want of further analysis here.   We desire only to say that the recognition of a nuisance, *sans* negligence, does not mean that the conduct and conditions brought to our attention in the instant case must necessarily be so classed.   Indeed, taking the evidence according to its reasonable inferences, the nuisance, if it may be called such, was negligence-born, and must, in the legal sense, make obeisance to its parentage.

Doctrinal distinctions may not be pressed too far.   To be helpful in administration and to lend themselves in aid of justice, they must be kept close to the realities.   After all, it is the factual situation out of which the legal consequences flow, not the formal aspect, or the technical label which we conveniently apply.

Under the facts of this case, we see no transmutation of negligence into nuisance which would prevent the rights and liabilities of the parties from being properly probed by the issues submitted to the jury.   As adequately expressing the opinion of this Court upon the matter, we quote from an opinion written by *Chief Judge Cardozo* of the New York Court of Appeals, subsequently renowned Associate Justice of the United States Supreme Court, in *McFarland v. City of Niagara Falls,* 57 A. L. R., 1, 247 N. Y., 340, 160 N. E., 391: "Not a little confusion runs through

the reports as to the effect of contributory negligence upon liability for nuisance. Statements appropriate enough in the application to nuisance of one class have been thoughtlessly transferred to nuisance of another. There has been forgetfulness at times that the forms of actions have been abolished and that liability is dependent upon the facts and not upon the name. Confining ourselves now to the necessities of the case before us, we hold that whenever a nuisance has its origin in negligence one may not avert the consequences of his own contributory negligence by affixing to the negligence of the wrongdoer the label of nuisance."

Whether plaintiff's intestate might not be independently negligent, so as to bar his recovery, by reason of his attempt to abate a nuisance of the character described, and in the manner of his attack, might have been a question on defendant's motion as to judgment of nonsuit upon any aspect of the case. The rule of the prudent man might dictate that he leave the nuisance alone when it showed no present disposition to molest him. *Hendrix v. R. R.,* 198 N. C., 142, 150 S. E., 873; *McFarland v. City of Niagara Falls, supra.*

Had the defendant been compelled to bring up the refusal of its motion for review here, it is difficult to see how that relief could have been denied on the plaintiff's evidence.

We are unable to help the plaintiff upon the outcome of the first issue, and the second was not reached.

We find

No error.