JETHRO MIDGETT, JR. v. NORTH CAROLINA STATE HIGHWAY
COMMISSION.

AND

MATTIE MIDGETT v. NORTH CAROLINA STATE HIGHWAY
COMMISSION.

(Filed 29 September, 1965.)

1. **Water and Water Courses § 1; Eminent Domain § 2— Evidence held to show that storm of intensity causing damage could have been anticipated.**

Plaintiffs contended that the construction of a bypass highway parallel to the ocean at an elevation above that of the surrounding land impeded the waters of the ocean flowing over the dunes during a storm and caused them to flood plaintiffs' lands lying to the east of the highway, and that the construction of the highway at such elevation constituted a permanent nuisance amounting to a "taking". Plaintiff's evidence tending to show that storms similar in suddenness, force and quantity and flow of water to the storm causing the damage occurred at irregular intervals in the area over a period of years, *is held* to make out a *prima facie* showing that the storm in question could be reasonably anticipated, and therefore that the damage was not the result of an "Act of God" for which no action would lie.

2. **Eminent Domain § 6—**

Plaintiff contended that the construction of a bypass highway parallel to the ocean at an elevation above that of the surroundings caused the waters of the ocean flowing over the dunes during a storm to flood plaintiffs' lands lying to the east of the highway, and that the construction of the highway at such elevation constituted a permanent nuisance amounting to a "taking". *Held:* The cause of action, if any, accrued only when damages were inflicted, and therefore evidence of depreciation in value of the land immediately after construction of the highway and prior to the storm causing the damage giving rise to the suit, is irrelevant and of no probative value.

3. **Damages § 1; Nuisance § 1; Eminent Domain § 2—**

One who seeks damages for the taking of property by the sovereign by reason of the alleged creation and maintenance by the sovereign of a permanent and continuing nuisance must make a *prima facie* showing of substantial and measurable damages, and in the absence of competent evidence of material damage resulting directly from the creation of a permanent structure or obstruction, nonsuit is proper.

4. **Damages § 14—**

The burden is upon the complaining party to establish by evidence such facts as will furnish a basis for assessment of substantial damages according to some definite and legal rule.

5. **Eminent Domain § 2; Nuisance § 1— If structure causes damages solely because of omissions in maintenance, damage is not result of a "taking".**

Plaintiff contended that the construction of a bypass highway parallel to the ocean at an elevation above that of the surroundings caused the waters

of the ocean flowing over the dunes during a storm to flood plaintiffs' lands lying to the east of the highway, and that the construction of the highway at such elevation constituted a permanent nuisance amounting to a "taking". There was evidence that the Commission constructed drains under the bypass highway and that the drains had become obstructed prior to the storm. *Held:* Plaintiffs' cause of action subsists only if the drains as constructed are insufficient to carry off the waters incident to the storm, since if the damages resulted solely because the drains had not been kept open, there would be no permanent nuisance but only a mere injury from negligent omission to keep the drains open on the occasion in question.

**6. Negligence § 2; Nuisance § 1—**

Negligence and nuisance are separate torts, but a structure or condition which may be lawful may become a nuisance by reason of the manner of its maintenance and management.

**7. Highways § 9—**

The State Highway Commission is an agency of the State and is not liable for the negligent omission of its employees, even under the provisions of the Tort Claims Act.

APPEAL by plaintiffs from *Parker, J.,* January 1965 Session of DARE.

*Frank B. Aycock, Jr., and Robert B. Lowery for the plaintiffs.*
*Attorney General Bruton, Deputy Attorney General Lewis, Staff Attorney Costen, Assistant Attorney General McDaniel and Gerald White for defendant.*

MOORE, J. The two cases, above entitled, were consolidated for trial. Plaintiffs allege that defendant, State Highway Commission, in the manner in which it constructed a highway, created a continuing nuisance which has caused permanent damage to their real estate, and by means thereof defendant has appropriated their property for a public purpose, for which they are entitled to compensation.

The *Jethro Midgett, Jr.,* case was here at the Fall Term 1963. We held that the allegations of the complaint state a good cause of action and are sufficient to survive demurrer. *Midgett v. Highway Commission,* 260 N.C. 241, 132 S.E. 2d 599. The facts alleged are fully summarized in that opinion and will not be repeated here. The two cases are in all material aspects identical except the parties plaintiff and their lands.

The cases came on for trial at the January 1965 Session of Dare County Superior Court. At the close of plaintiffs' evidence the court sustained defendant's motion for nonsuit and entered judgment dismissing the action. Plaintiffs contend this was error.

Plaintiffs offered evidence tending to establish these facts:

Old Highway 158 runs along the east side of the Outer Banks in Nags Head Township, Dare County, near and parallel to the ocean front. It is about natural grade level. In 1959 the Highway Commission completed the construction of 158 Bypass, which is about 15 miles long. For the greater part of this distance it is about 500 feet west of old 158 and toward the Sound side of the Outer Banks. The Bypass is generally above natural grade level, ranging from slightly above grade to five feet above. At all points it is at a somewhat higher level than old 158. Plaintiffs own adjoining lots, fronting old 158 and lying between it and the Bypass. They have a number of buildings on the lots and reside there. Their property is in a slight natural depression. There are no dunes between it and the ocean. Where their property is located the terrain is practically level from old 158 to the Bypass; to the west of the Bypass it slopes gradually to the Sound. At or near plaintiffs' property the old Nags Head Road intersects old 158, and runs thence westwardly to the Sound. It ran at natural grade level all the way to the Sound, prior to the construction of the Bypass. And when storms brought water over the dune line, the water followed generally the course of the Nags Head Road, spread out over the depressed area, which served as a wide natural channel, and flowed into the Sound. The Highway Commission constructed the Bypass across the depression at a height of five feet above natural grade. At its intersection with the Bypass the Nags Head Road was raised to the level of the Bypass. Prior to and during the course of construction of the Bypass Jethro Midgett, Jr., and Jethro Midgett, Sr. (husband of plaintiff Mattie Midgett) protested the construction of the Bypass at such level. Jethro, Sr., wrote letters to the governor and the Commission's division engineer. The latter promised to fully investigate and consider the matter. However, the plans were not changed. On 7 March 1962 came the "Ash Wednesday storm." It came up suddenly and without warning — it was not a hurricane. Between 4:00 and 5:00 A.M. water began to come over the dune line at the ocean; it came in waves and swells. The water continued coming over until after 7:30 A.M. Water was impounded by the Bypass, and rose until it reached the top and began to run over in places. The water was five feet deep in plaintiffs' yards and on their land, and rose to a height of three feet in their buildings, which were on pilings "right good way up." About 8:00 A.M. or shortly thereafter the water cut through the Bypass at two places west of plaintiffs' property and in the vicinity of the old Nags Head Road. At one of these places the entire road surface and fill were washed out, leaving a gap of 30 to 40 feet. When the Bypass gave way the water, flowing to the gaps both from the north and south, began to fall. In the meantime the storm had subsided. The water soon

flowed into the Sound. Water in as great or greater quantities had come over the dune line during storms which occurred before the Bypass was constructed. This was true of the hurricanes and "northeasters" of the following dates: 1929, August 1933, September 1936, 1944, and 1956. During some of these storms the water came "across from the ocean higher than it did at this time." The Ash Wednesday storm of March 1962 was no more sudden than some of the others. Prior to the construction of the Bypass, water was never more than 18 to 20 inches deep on plaintiffs' lands as a result of any storm.

The question most seriously debated by counsel is whether the evidence shows *prima facie* that the storm of 7 March 1962 was similar in nature and intensity to the storms of prior years in the Nags Head area and could have been reasonably anticipated by defendant, and was not so extraordinary and unusual as to constitute an "Act of God." Pertinent legal principles are set out in *Midgett v. Highway Commission, supra* (p. 247), as follows:

> "An Act of God is not a sufficient predicate for an action for damages. The term 'Act of God,' in its legal sense, applies only to events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality affords no reasonable warning of them. (Citing authority). The builder of an obstruction of surface waters is not bound to anticipate unprecedented storms or rainfalls, and is not liable for damages resulting from extraordinary storms and floods. (Citing cases). The owner of a barrier to surface water is not bound to provide against floods of which the usual course of nature affords no premonition. An extraordinary flood is one the coming of which is not to be anticipated from the natural course of nature. An ordinary flood is one, the repetition of which, although at uncertain intervals, can be anticipated. The fact that similar floods had occurred has been held to tend strongly to show that they are not so extraordinary and unusual that they might not have been reasonably expected to occur. (Citing authority). . . . it is ordinarily a question for the jury and the burden is on plaintiff to show that the storm or flood was such as might reasonably have been anticipated and not an Act of God."

The evidence tends to show that storms, similar in suddenness, force and quantity and flow of water to the Ash Wednesday storm of 1962, occurred at irregular intervals in the Nags Head area prior to 1959. In our opinion this makes out a *prima facie* showing that the 1962 storm could have been reasonably anticipated.

We find, however, plaintiffs' evidence insufficient in two material aspects:

(1). There is no evidence, of any probative value, tending to show any substantial damages. Plaintiffs introduced evidence of the difference in value of their property before the construction of the Bypass and the value after the construction, in the light of witnesses' "experiences with water coming over the dune line in past years." The Bypass was constructed in 1959. If there were damages amounting to a taking, they did not occur until 7 March 1962, the date of the Ash Wednesday storm. The cause of action, if any, accrued only when damage had been inflicted. There can be no recovery of damages before they occur. *Midgett v. Highway Commission, supra* (p. 249); *Raleigh v. Edwards,* 235 N.C. 671, 71 S.E. 2d 396; *McDaniel v. Greenville-Carolina Power Co.,* 78 S.E. 980, 6 A.L.R. 1321. There was not, in contemplation of law, any damage to plaintiffs' property prior to 7 March 1962. The evidence referred to above is wholly irrelevant, entirely prospective and speculative, and of no probative value. The evidence of damage, if any there was, should have been directed to the values immediately before and after the storm.

Plaintiffs contend that there is evidence of nominal damages at least and, therefore, the failure to show monetary loss does not justify nonsuit. They cite *Johnson v. Sanders,* 260 N.C. 291, 132 S.E. 2d 582, and *Edwards v. Erwin,* 148 N.C. 429, 62 S.E. 545. These cases involved breaches of contract. "When plaintiff proves breach of contract he is entitled at least to nominal damages." *Sineath v. Katzis,* 218 N.C. 740, 12 S.E. 2d 671. Proof of injury resulting from negligence also entitles plaintiff to nominal damages. *Clark v. Emerson,* 245 N.C. 387, 95 S.E. 2d 880. However, in the instant case, if plaintiffs are to recover at all, they must recover on the theory of continuing nuisance, an actual permanent invasion of their land amounting to an appropriation of, and not merely an injury to, property. *Midgett v. Highway Commission, supra* (p. 248); *Sanquinetti v. United States,* 264 U.S. 146. In an action for damages based on an alleged nuisance, the injury suffered by plaintiff must be *substantial. Watts v. Manufacturing Co.,* 256 N.C. 611, 124 S.E. 2d 809; *Raleigh v. Edwards, supra; Pake v. Morris,* 230 N.C. 424, 53 S.E. 2d 300; *Holton v. Oil Co.,* 201 N.C. 744, 161 S.E. 391; *Hazen v. Perkins,* 105 A. 249, 23 A.L.R. 748; *Nelson v. Swedish Evangelical Lutheran Cemetery Ass'n.,* 126 N.W. 723; *Lewis v. Pingree Nat. Bank,* 151 P. 558. "Each individual in a community must put up with a certain amount of annoyance, inconvenience or interference, and must take a certain amount of risk in order that all may get on together." *Watts v. Manufacturing Co., supra.* One who seeks damages for the taking of property by the sovereign by reason of the alleged

creation and maintenance by it of a permanent and continuing nuisance must make a *prima facie* showing of substantial and measurable damages.

There is evidence that Mattie Midgett kept a garden, the garden was destroyed by flood waters from the 1962 storm, but it had never been destroyed by prior storms. During the 1962 storm the water rose to a depth of three feet in plaintiffs' buildings. These bits of evidence, without more, are insufficient to support a verdict of substantial monetary damage to real estate. No substantial recovery may be had on mere guesswork and inference. The burden is always upon the complaining party to establish by evidence such facts as will furnish a basis for assessment of substantial damages, according to some *definite* and *legal rule*. When compensatory damages are susceptible of proof with approximate accuracy and may be measured by some degree of certainty, they must be so proved. Evidence wanting in such proof will not justify a verdict of substantial damages. *Lieb v. Mayer*, 244 N.C. 613, 94 S.E. 2d 658.

(2). The evidence leaves in the realm of speculation and conjecture the answer to the question whether the Bypass, as constructed, caused the excessive inundation and alleged damages.

On 3 January 1958, in answer to a letter from Jethro Midgett, Sr., W. N. Spruill, Division Engineer of the Highway Commission, wrote: "I am glad the contractor has completed the installation of the drainage structures under the new project. We believe they provide sufficient opening to take care of flooded conditions when and if such conditions develop in the future." There is evidence to the following effect: When the Bypass was constructed drains were put under the road. The Highway Commission's employees cleaned the drains at times. Jethro Midgett, Sr., on occasions requested said employees to clean them. He, Jethro, Jr., and others removed sand and debris from the drains a number of times. Boards, debris and sand would get caught in the drains and close them. They were obstructed on the morning of the storm — the water could not get through. There was no water on the west side of the Bypass on the morning of the storm (except such as spilled over it) until the water broke through the embankment.

This material question arises: Were the drains under the Bypass sufficient in size, design and manner of construction to accommodate water coming over the dune line by reason of storms, which could be reasonably anticipated, so as to prevent it from rising on the land to a substantially greater height than it would had the Bypass not been constructed? If *not*, the Bypass, permanent in nature, created and maintained a continuing nuisance, imposing liability upon the Highway Commission for substantial damages to land caused by the excessive

depth of impounded water. *Sherrill v. Highway Commission,* 264 N.C. 643, 142 S.E. 2d 653. If the drains, as constructed, were sufficient to accommodate the water, and if the damages complained of were caused by the negligence of the State Highway Commission employees in failing to keep the drains clear of sand and debris, it is a different matter. In such event, it is appropriate to repeat here what was said in *Butler v. Light Co.,* 218 N.C. 116, 121, 10 S.E. 2d 603: ". . . the nuisance, if it may be called such, was negligence-born, and must, in legal sense, make obeisance to its parentage." See also *Powers v. Trust Co.,* 219 N.C. 254, 13 S.E. 2d 431. The Highway Commission is an agency of the State and is not liable for the negligent omissions of its employees even under the provisions of the Tort. Claims Act. G.S. 143-291; *Flynn v. Highway Commission,* 244 N.C. 617, 94 S.E. 2d 571. Negligence and nuisance are separate torts, but the line of demarcation between them is often indistinct and difficult to define. Primarily a nuisance is a condition, not an act or omission, but a structure or condition which is lawful may be a nuisance by reason of the manner of its maintenance or management. *Andrews v. Andrews,* 242 N.C. 382, 88 S.E. 2d 88; *Morgan v. Oil Co.,* 238 N.C. 185, 77 S.E. 2d 682; *Swinson v. Realty Co.,* 200 N.C. 276, 156 S.E. 545. Where circumstances are such that the damage flows from a cause, temporary in nature, that may be readily removed, the measure of damages is not the difference in the market value of the land before and after the injury. *Oates v. Manufacturing Co.,* 217 N.C. 488, 8 S.E. 2d 605. In such case there is a mere injury, not a taking. "In order to create an enforceable liability against the government it is, at least, necessary that the overflow of water . . . be the direct result of the structure established and maintained by the government, and constitute an actual permanent invasion of the land, or a right appurtenant thereto, amounting to an appropriation of and not merely an injury to the property." *Midgett v. Highway Commission, supra* (p. 248).

Plaintiffs' proof must be of such character as to show with at least some degree of certainty that the alleged wrong produced the damage complained of. *Parris v. Fischer & Co.,* 221 N.C. 110, 19 S.E. 2d 128; *Lee v. Stevens,* 251 N.C. 429, 111 S.E. 2d 623. The cause of plaintiffs' alleged damages is left to conjecture by the evidence introduced.

Affirmed.