LEA COMPANY v. NORTH CAROLINA BOARD OF TRANSPORTATION

No. 8118SC623

(Filed 1 June 1982)

1. **Eminent Domain § 13; Judgments § 37.5— consent judgment in condemnation action—no bar to damages for flood easement**

In an inverse condemnation action seeking compensation for a flood easement allegedly taken by defendant Board of Transportation, the evidence supported determinations by the trial court that the complaint, notice and declaration of taking in a prior condemnation action instituted by defendant and a consent judgment in that action in which defendant agreed to pay for the taking of small portion of plaintiff's property did not give plaintiff notice that

Lea Co. v. Board of Transportation

damages from construction responsible for the flooding were included in the condemnation action and that plaintiff's action is not barred by the prior consent judgment.

2. **Eminent Domain § 13— highway construction—inverse condemnation—easement for flooding**

The trial court properly concluded that defendant Board of Transportation took an easement for flooding by the placement of its highway structures where the evidence supported determinations by the court that (1) the interest taken by defendant is maximally measured by the overflow of waters occasioned by a 100 year flood, and such an event was legally foreseeable by defendant; (2) defendant's structures substantially increased the level of flooding which would have been experienced had those structures not been built; (3) the highway structures are of a permanent nature and the overflow which occurs with the 100 year flood constitutes a permanent invasion of plaintiff's land; (4) and plaintiff showed substantial physical damage to its property measurable in monetary terms through evidence of repair costs, lost present and future rental income, and an estimate of the value of the property immediately before and immediately after the taking.

3. **Eminent Domain § 13.4— inverse condemnation—easement for flooding—calculations of flood levels—similarity of conditions**

In an inverse condemnation action seeking compensation for a flood easement allegedly taken by defendant Board of Transportation by the placement of its highway structures, an expert's calculations of flood levels were not inadmissible because construction of the highway project was not complete at the time of the flooding and conditions then were different where there was evidence of substantial similarities of conditions and no evidence of significant dissimilarities.

4. **Evidence § 47— expert testimony—computer computations—inability to state basis of calculations**

Computer calculations by defendant's expert witness were properly excluded where the witness was unable to state with certainty the basis of his calculations.

5. **Eminent Domain § 13; Nuisance § 1; Waters and Watercourses § 1.1— inverse condemnation for flooding—doctrine of moving to the nuisance**

Assuming, *arguendo*, that the doctrine of "moving to the ,nuisance" or "priority of occupation" is applicable in an inverse condemnation action, mere priority of occupation would not *ipso facto* bar recovery in an inverse condemnation action but would be merely one factor in the court's determination of whether there was a taking; furthermore, the trial court's finding supported by competent evidence that the nuisance was caused by a combination of structures constructed or extended subsequent to plaintiff's purchase of the property precluded a conclusion that plaintiff "moved to the nuisance."

6. **Rules of Civil Procedure § 15.2— amendment of complaint to conform to evidence**

The trial court did not abuse its discretion in permitting plaintiff's G.S. 1A-1, Rule 15(b) post-trial motion to amend its complaint to conform to the

evidence where defendant did not object to any evidence as being outside the pleadings.

**7. Eminent Domain § 13— inverse condemnation action for flooding—statute of limitations**

　　The evidence was insufficient to show damage to plaintiff's property from the taking of an easement for flooding prior to 1 September 1974, and the filing of plaintiff's complaint on 30 May 1975 thus was within the statute of limitations, whether the two-year statute of G.S. 136-111, the three-year statute of G.S. 1-52, or the ten-year statute of G.S. 1-56 is the applicable provision.

**8. Appeal and Error § 57; Trial § 58— failure to adopt proposed findings**

　　The trial court did not err in failing to adopt defendant's proposed findings of fact where the findings made by the court were supported by evidence and were fully dispositive of the issues.

APPEAL by defendant from *McLelland, Judge.* Judgment entered 3 November 1980 in Superior Court, GUILFORD County. Heard in the Court of Appeals 10 February 1982.

Plaintiff brought this inverse condemnation action seeking compensation for a flood easement allegedly taken by defendant when its highway structures foreseeably increased the level of flooding on plaintiff's property, resulting in substantial damage to apartments thereon. After trial without a jury the court adjudged that defendant had taken a defined interest in plaintiff's property as a result of a flood on 1 September 1974, and ordered that just compensation be determined by a jury.

Defendant appeals.

*Attorney General Edmisten, by Special Deputy Attorney General James B. Richmond and Lindsay R. Davis, Jr., for defendant appellant.*

*Turner, Enochs & Sparrow, P.A., by C. Allen Foster and B. J. Pearce, for plaintiff appellee.*

WHICHARD, Judge.

CONSENT JUDGMENT

[1] Defendant contends the action is barred by a prior consent judgment in which it agreed to pay for the taking of a small portion of plaintiff's property, including fee simple title to a right of

way and a temporary construction easement. It argues that because "compensation paid for the taking of property includes . . . the effects on the remaining property should only a portion be taken," see G.S.136-112(1)(1981), the subsequent damage by flooding to the remainder of plaintiff's property was encompassed by the prior consent judgment, which expressly included "any and all damages caused by the construction of said project." It specifically argues that the project number involved in the consent judgment gave plaintiff notice that damages from construction responsible for the instant flooding were included in that condemnation action.

The trial court made the following pertinent findings of fact:

13. The condemnation action referred to above [the prior action in question] was concluded by the execution and filing of a consent judgment . . . .

14. The complaint, notice and declaration of taking and the consent judgment referred the defendants in that action, who are the general partners of the plaintiff in this action, solely to . . . highway project no. 8.1533802.

15. The complaint and the notice and declaration of taking had attached to them a map showing the area of the taking. This map did not show Ramp A, Y-3 or Ramp B [the areas in question here] as being involved in the condemnation proceeding.

16. The highway project numbers assigned by defendant to the construction of Ramp A and the construction of the extensions to Y-3 and Ramp B were 8.1533804 and 8.133805, respectively.

17. The property taken was not adjacent to or near the area of Ramps A, B and Y-3.

Because the trial was by a judge without a jury, "the court's findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary." *Williams v. Insurance Co.*, 288 N.C. 338, 342, 218 S.E.2d 368, 371 (1975); *see also Worthington v. Worthington*, 27 N.C.App. 340, 219 S.E.2d 260 (1975), *disc. rev. denied*, 289 N.C. 142, 220 S.E.2d 801

(1976). We find ample competent evidence in the record to support the foregoing findings, and they thus are conclusive on this appeal.

These findings suffice to support the following pertinent conclusions of law:

1. Neither the description of the highway project in the condemnation complaint and notice of taking initiated by the defendant, . . . nor the description of this project in the consent judgment which concluded the action provided plaintiff in this action . . . any notice that the general release contained in the consent judgment referred to or covered damages caused by construction associated with . . . the numbers of the projects of which plaintiff now complains.

2. The doctrines of res judicata, estoppel, or law of the case do not bar plaintiff from bringing the instant action by reason of the prior consent judgment.

3. The language in the consent judgment "for any and all damages caused by the construction of that project" as a matter of law cannot be construed to preclude a claim by [plaintiff] rising from construction other than on or directly affecting the plaintiff's property which was taken or which lies directly adjacent to the property taken. Whatever the project numbers that may have been recited, the language relied on by defendant cannot be construed to have included, within the necessary contemplation of the parties to the consent judgment, any damages arising from construction away from [plaintiff's] property.

We thus overrule defendant's assignments of error relating to the prior consent judgment.

### EASEMENT FOR FLOODING

[2] Defendant contends the court erred in concluding that it took an easement for flooding by placement of its highway structures.

In order to create an enforceable liability against the government it is, at least, necessary that the overflow of water be such as [1] was reasonably to have been anticipated by the government, [2] to be the *direct* result of the structure established and maintained by the government, and [3] con-

stitute an actual permanent invasion of the land, or a right appurtenant thereto, amounting to an appropriation of and not merely an injury to the property.

*Midgett v. Highway Commission,* 260 N.C. 241, 248, 132 S.E. 2d 599, 607 (1963) [hereinafter *Midgett I*]. We hold that the flooding here was adequately shown to fulfill these requirements.

## I.

Plaintiff must first prove that defendant could reasonably foresee the overflow. Defendant assigns error to the conclusion that the flood here was a "reasonably foreseeable and recurring [event]." The court concluded that the interest taken by defendant is maximally measured by the overflow of waters occasioned by a 100 year flood, since the flooding here was at approximately 100 year flood levels. This conclusion is supported by the findings which in turn are supported by competent evidence in the record. *Williams, supra; Worthington, supra.* Defendant does not dispute that a 100 year flood is one which, as a matter of statistical probability, can be anticipated to occur once in every 100 years. A foreseeable flood is not an extraordinary one, but "one, the repetition of which, although at uncertain intervals, can be anticipated." *Midgett I,* 260 N.C. at 247, 132 S.E. 2d at 606. Because competent evidence in the record establishes that a 100 year flood is statistically foreseeable by those familiar with the science of hydrology, there was no error in the conclusion that such an event was legally foreseeable by defendant. The conclusion is further supported by the finding, to which defendant did not except, that defendant's own *Handbook of Design for Highway Drainage Structure* requires it to "check the effect of the 100 year flood when designing box culverts under interstate highways and make adjustments to the design criteria as necessary."

Defendant also assigns error to admission of the definition of "act of God" from its specification manual, arguing that the definition is prejudicial to the extent that it enlarges the scope of foreseeability beyond that fixed by the common law. The definition, admission of which was objected to, is as follows: "Events in nature so extraordinary that the history of climate variations and other conditions in the particular locality affords no reasonable warning of them." This definition was derived directly from the

common law. *See Midgett I,* 260 N.C. at 247, 132 S.E.2d at 606. The argument is thus without merit.

Defendant further assigns error to the conclusion that "neither the rain nor the associated flood" here were acts of God. The findings and evidence amply support the conclusion.

## II.

Plaintiff must prove that the overflow was the direct result of defendant's structures. The crucial question regarding causation is: "Were the [structures] sufficient in size, design and manner of construction to accommodate [flood] water . . . which could be reasonably anticipated, so as to prevent it from rising on the land to a substantially greater height than it would had the [structures] not been constructed?" *Midgett v. Highway Commission,* 265 N.C. 373, 378, 144 S.E.2d 121, 125 (1965) [hereinafter *Midgett II*]. The finding that defendant's structures "substantially increas[ed] the level of flooding which otherwise would have been experienced had these structures not been built" is supported by competent scientific evidence in the record, and is therefore conclusive on appeal. *Williams, supra; Worthington, supra.*

## III.

Plaintiff must show "an actual *permanent* invasion of the land, or a right appurtenant thereto." *Midgett I,* 260 N.C. at 248, 132 S.E.2d at 607. (Emphasis supplied.) Defendant argues that the flooding here was not sufficiently "frequent" to constitute a taking under this standard.

The frequency of the flooding is not, in itself, determinative of a taking. "There is no difference of kind, but only of degree, between a permanent condition of continual overflow . . . and a permanent liability to intermittent but inevitably recurring overflows . . . ." *United States v. Cress,* 243 U.S. 316, 328, 37 S.Ct. 380, 385, 61 L.Ed. 746, 753 (1917). The 100 year flood is, by statistical definition, an inevitably recurring event. Thus, if the structures causing the overflow are permanent, the overflow which occurs with the 100 year flood constitutes a permanent invasion. A permanent structure is

> one which may not be readily altered at reasonable expense so as to remedy its harmful effect, or one of a durable

character evidently intended to last indefinitely and costing practically as much to alter or remove as to build in the first place . . . . *A segment of an improved highway is a structure of permanent nature.*

*Midgett I,* 260 N.C. at 248, 132 S.E.2d at 607. (Emphasis supplied.) We thus find defendant's argument relating to frequency of flooding without merit.

### IV.

A *prima facie* showing of substantial physical damage measurable in monetary terms is also required. *Midgett II,* 265 N.C. at 377-78, 144 S.E.2d at 125. Defendant contends the court erred in finding that "[p]laintiff's property suffered substantial damage" as a result of the flooding.

Plaintiff adequately demonstrated its monetary loss through evidence of repair costs, lost present and future rental income, and an estimate of the value of the property immediately before and immediately after the taking by a person familiar with the property. *See* G.S. 136-112 (1981); *Highway Comm. v. Fry,* 6 N.C.App. 370, 374, 170 S.E.2d 91, 94 (1969). The finding is thus supported by competent evidence and is conclusive on appeal. *Williams, supra; Worthington, supra.*

### V.

Defendant contends the court erred in making numerous findings regarding its errors in calculating anticipated flows and its faulty design of structures to accommodate these flows. It argues that: (1) these findings are irrelevant to whether there was a taking, (2) the court was probably improperly influenced by them, and (3) there is insufficient evidence to support them. We find competent evidence sufficient to support the findings that (1) defendant's computations "were not reasonably accurate projections of the magnitude of flood waters to be associated with the design criteria flood, i.e., the 50 year flood," and (2) the structures built by defendant "could not carry the waters associated with the design discharge flood, as that flood is properly determined by defendant's own method." These findings are relevant to whether the 100 year flood was reasonably foreseeable, because the undisputed evidence shows that the same methodology defendant used to calculate (improperly) the 50 year

flood can be used to calculate and thus foresee the 100 year flood. They are also relevant to whether defendant's structures were a direct cause of the flood here, because a structure which would not accommodate a 50 year flood clearly would not accommodate a 100 year flood. Defendant offers no support for its claim that the court improperly applied these findings where they were not relevant, and we find no support therefor in the record.

We note that the court stated in its conclusions of law that defendant's faulty design "is not . . . concluded by the Court to constitute . . . negligence on the part of the defendant, but the same does support the findings and conclusions that [defendant's structures] directly and proximately cause[d] the substantial increase in levels of flooding. . . ."

### EVIDENTIARY OBJECTIONS

"In a trial before a judge, technical objections to the admissibility of evidence will not be observed. Prejudicial results must be shown or it may be deemed the court in its findings considered only competent evidence." *Contracting Co. v. Ports Authority,* 284 N.C. 732, 739, 202 S.E.2d 473, 477 (1974). Error is shown, however, when it affirmatively appears that the trial judge was influenced by incompetent testimony. *Hicks v. Hicks,* 271 N.C. 204, 208, 155 S.E.2d 799, 802 (1967).

Defendant first contends that evidence admitted regarding flooding subsequent to 1 September 1974, and flood levels other than that for the 100 year flood, was irrelevant and prejudicial. While it is true that such evidence does not support the fact of a taking on 1 September 1974, plaintiff also alleged a taking by subsequent flooding. The evidence was thus relevant to the issues pled, and it was only through consideration of evidence of all allegedly damaging floods that the court was able fully to determine whether and when a taking occurred. Further, assuming, *arguendo,* that the evidence was irrelevant, defendant has failed to show that the court was improperly influenced thereby.

[3] Defendant next contends the court erred in admitting plaintiff's expert's calculations of flood levels which were based on the allegedly false assumption that conditions had remained unchanged since the time of the flood. It argues that because construction of the highway project was not complete at the time of

flooding, conditions then were indisputably different. It suggests no specific ways in which they differed, however. The record reveals some evidence of substantial similarities and no evidence of significant dissimilarities. Whether the calculations were made under sufficiently similar conditions to be admissible was within the discretion of the trial court. *See Mintz v. R.R.*, 236 N.C. 109, 114-15, 72 S.E. 2d 38, 43 (1952). We find no abuse of discretion in admission of the calculations here.

[4] Defendant further contends certain computer computations by its expert witness were improperly excluded. "[T]he data upon which an expert witness bases his opinion must be presented to the [fact finder] in accordance with established rules of evidence. ... A witness is not permitted to base an opinion upon facts of which he has no knowledge." *Todd v. Watts*, 269 N.C. 417, 420, 152 S.E. 2d 448, 451 (1967). *See also State v. Bock*, 288 N.C. 145, 162, 217 S.E. 2d 513, 524 (1975), *death sentence vacated*, 428 U.S. 903, 49 L.Ed. 2d 1209, 96 S.Ct. 3208 (1976); 1 *Stansbury's North Carolina Evidence* § 136, p. 445-46 (Brandis Rev. 1973 & Cum. Supp. 1979).

The expert here failed to produce the computer printouts used in making his calculations. When questioned regarding his method of calculation, the witness stated that he had used the same computer deck plaintiff's expert had used, with some modifications. When asked if he could state with certainty what modifications were made without seeing the input data in the missing computer printouts, he answered, "I *think* I can from the results." (Emphasis added.) Because the witness was unable to state with certainty the basis of his calculations, we find no error in the exclusion of his testimony.

Further, the record shows the excluded testimony was substantially similar to calculations admitted through plaintiff's expert, and that any differences tended to support plaintiff's allegation of a taking. Thus, even if improper, the exclusion was not prejudicial to defendant.

### NUISANCE

[5] Defendant contends this action is grounded on a theory of nuisance, which has' its origin in negligence, and that it therefore should be barred by the doctrine of "moving to the nuisance," the analogue of contributory negligence.

It is true that in this jurisdiction an inverse condemnation action for flooding is grounded on a nuisance theory.

> The right to have water flow in the direction provided by nature is a property right, and if such right of a landowner is materially interfered with so that his land is flooded by the manner in which a highway is constructed, it is a nuisance and a taking of property for public use for which compensation must be paid.

*Midgett I*, 260 N.C. at 248, 132 S.E. 2d at 606. Further,

> 'the nuisance . . . was negligence-born, and must, in legal sense, make obeisance to its parentage.' . . . Negligence and nuisance are separate torts, but the line of demarcation between them is often indistinct and difficult to define. Primarily a nuisance is a condition, not an act or omission, but a structure or condition which is lawful may be a nuisance by reason of the manner of its maintenance or management.

*Midgett II*, 265 N.C. at 379, 144 S.E. 2d at 125-26.

It is the general rule that one is not barred from bringing an action for damages merely because he purchases property in the vicinity of a nuisance. 58 Am. Jur. 2d, *Nuisances* § 216, p. 816 (1971); Annot., 42 A.L.R. 3d 344, § 3, p. 347 (1972). Our Supreme Court has recognized, however, that "priority of occupation as between the parties" is one factor to be considered in determining whether an invasion of another's land is unreasonable and thus a nuisance. *Watts v. Manufacturing Co.*, 256 N.C. 611, 618, 124 S.E. 2d 809, 814 (1962).

We find no dispositive authority in this jurisdiction on whether the doctrine of "moving to the nuisance" or "priority of occupation" is applicable in an inverse condemnation action. Assuming, *arguendo*, that it is, defendant at most could have expected the court to consider any evidence relevant thereto as one factor in its determination of whether there was a taking. Mere priority of occupation would not *ipso facto* bar recovery.

Further, although two of the structures in question were constructed in the 1950's, they were extended and a third structure was constructed between 1972 and 1974. The court concluded that "[t]he interest taken by defendant is an easement for the accommodation of those flood waters in excess of those which would

have been experienced on the site had the [*three*] *structures . . .*
not been constructed, maintained, and/or extended." (Emphasis
supplied.) The evidence establishes that plaintiff purchased its
property in 1972. Excess flooding caused by *the combination of
the three structures* could not have occurred before the third
structure was constructed between 1972 and 1974. Thus, the
foregoing conclusion, which is supported by the findings and by
competent evidence, precludes a conclusion that plaintiff "moved
to the nuisance."

Defendant also contends the finding that "plaintiff did not
know or have reason to know of any propensity of the property to
flood to any significant extent at reasonably predictable and
recurring intervals" is unsupported by the evidence, and that it is
relevant to the defense of "moving to the nuisance" and thus prej-
udicial. We hold that the finding is supported by competent
evidence, and that it is irrelevant to the issue of moving to the
nuisance because the nuisance was caused by a combination of
structures constructed or extended subsequent to plaintiff's pur-
chase of its property.

## MOTION TO AMEND

[6] Defendant contends the court erred in allowing plaintiff's
G.S. 1A-1, Rule 15(b) post-trial motion to amend its complaint to
conform to the evidence. The rule reads in pertinent part as
follows:

> When issues not raised by the pleadings are tried by the ex-
> press or implied consent of the parties, they shall be treated
> in all respects as if they had been raised in the pleadings.
> Such amendment of the pleadings as may be necessary to
> cause them to conform to the evidence and to raise these
> issues may be made upon motion of any party at any time,
> . . . but failure to so amend does not affect the result of the
> trial of these issues.

G.S.1A-1, Rule 15(b) (1969). Failure of a party to object to evidence
offered at trial on the specific grounds that the evidence was out-
side the pleadings results in trial of those issues by implied con-
sent. *See McRae v. Moore*, 33 N.C.App. 116, 123, 234 S.E.2d 419,
422-23, *disc. rev. denied*, 293 N.C. 160, 236 S.E.2d 703 (1977).

The record does not disclose that defendant objected to any evidence as being outside the pleadings. It thus was not necessary to amend the pleadings, since "failure to so amend does not affect the result of the trial of these issues." G.S. 1A-1, Rule 15(b) (1969). *See* W. Shuford, *North Carolina Civil Practice and Procedure* § 15-6, p. 137 (1975). There was thus no abuse of discretion in allowing plaintiff to amend its complaint to conform to the evidence. *See generally Auman v. Easter,* 36 N.C.App. 551, 555, 244 S.E.2d 728, 730, *disc. rev. denied,* 295 N.C. 548, 248 S.E.2d 725 (1978); *Davis v. Connell,* 14 N.C.App. 23, 26-27, 187 S.E.2d 360, 362-63 (1972).

## STATUTE OF LIMITATIONS

[7] Defendant pled the statute of limitations as a defense. It assigns error to the conclusion that plaintiff's cause of action arose on 1 September 1974, the "date the property first experienced substantial damage as a direct and proximate result of defendant's [structures]," and that commencement of the action on 30 May 1975 was thus within the applicable statute of limitations. It argues that plaintiff's property had been flooded many years earlier to a height greater than that of the 1 September 1974 flood, and that plaintiff's cause of action thus accrued at an earlier time which was outside the statute of limitations.

> Where there has been a taking of property by the construction and maintenance of a nuisance, the right of action does not accrue until damage has occurred. [Citations omitted.] And ordinarily the applicable statute of limitations begins to run against the landowner at the time the first damage arises from the nuisance.

*Midgett I,* 260 N.C. at 251, 132 S.E.2d at 608. We agree with the trial court that the evidence was insufficient to show damage to plaintiff's property from the taking of an easement for flooding prior to 1 September 1974. The filing of plaintiff's complaint on 30 May 1975 thus was within the statute of limitations, whether the two year statute (G.S. 136-111 (1981)), the three year statute (G.S. 1-52 (1969)), or the ten year statute (G.S. 1-56 (1969)), is the applicable provision. *See Dayton v. Asheville,* 185 N.C. 12, 16, 115 S.E. 827, 829-30 (1923).

### PROPOSED FINDINGS AND CONCLUSIONS

**[8]**  Defendant contends the failure to adopt its proposed findings of fact and conclusions of law is reversible error. In a trial without a jury the court's findings are conclusive on appeal if supported by competent evidence. *Williams, supra; Worthington, supra.* The trial judge is required to make findings on sufficient material facts to support the judgment, but is not required to make or adopt further findings which are not essential. *See Anderson v. Insurance Co.*, 266 N.C. 309, 313, 145 S.E.2d 845, 849 (1966); *In re* Custody of Stancil, 10 N.C.App. 545, 549, 179 S.E.2d 844, 847 (1971). Because the findings made here are supported by the record and are fully dispositive of the issues, we find no error in the failure to adopt defendant's proposed findings and conclusions.

### RESULT

We have examined carefully defendant's other assignments of error. We find nothing therein, or in those discussed above, which merits reversal or re-trial. The judgment is therefore

Affirmed.

Judges CLARK and ARNOLD concur.