LEA COMPANY v. NORTH CAROLINA BOARD OF TRANSPORTATION

No. 588PA85

(Filed 2 July 1986)

1. **Eminent Domain § 5.10— delay in payment—additional compensation—rate of interest**

     The statutory or legal rate of interest provided by N.C.G.S. § 136-113 as the measure of additional compensation for delay in payment in condemnation actions is deemed presumptively reasonable, but the landowner may rebut the rate's reasonableness by introducing evidence of prevailing market rates and demonstrating that the prevailing rates are higher than the statutory rate.

2. **Eminent Domain § 5.10— delay in payment—additional compensation—rate of interest—prudent investor standard**

     The "prudent investor" standard is adopted for determining the appropriate interest rate to be used in calculating additional compensation for delay of payment in condemnation actions. Accordingly, in determining the proper rate of interest for delayed payment, the trial court shall consider any

evidence introduced as to the prevailing interest rates for investments varying in length and risk during the period of delay.

3. **Eminent Domain § 5.10— delay in payment—additional compensation—rate of interest—decision by court**

   The trial court rather than the jury may determine the proper rate of interest and the amount to be added to the property owner's award to compensate for loss due to delay of payment in a condemnation action.

4. **Eminent Domain § 5.10— delay of payment—additional compensation—compound interest**

   Compound interest rather than simple interest should be allowed for delayed payment in condemnation cases if the evidence shows that during the pertinent period the "prudent investor" could have obtained compound interest in the market place.

ON discretionary review of the judgment entered 11 April 1985 by *Ross, J.* in Superior Court, GUILFORD County. Heard in the Supreme Court on 12 February 1986.

*Foster, Conner, Robson & Gumbiner, P.A., by C. Allen Foster and Eric C. Rowe, for the plaintiff-appellee.*

*Lacy H. Thornburg, Attorney General, by James B. Richmond, Special Deputy Attorney General, for the defendant-appellant.*

MITCHELL, Justice.

This appeal involves an action brought by the plaintiff Lea Company under N.C.G.S. § 136-111 for inverse condemnation. The primary issue raised before this Court involves the constitutionality of the statutory interest rate as applied to the facts of this case. The trial court held that it would be unconstitutional to apply the statutory rate of 8% per annum in calculating the additional compensation owed the plaintiff by reason of the defendant's delay in payment from the date of the taking to the date of judgment awarding compensation. We agree.

The plaintiff alleged that the defendant North Carolina Board of Transportation (hereinafter "BOT") had taken a compensable interest in Lea Company's property as a result of intermittent and recurring flooding caused by inadequately sized culverts installed by BOT in its highway structures downstream of Lea Company's property. On 18 August 1980, judgment was entered in Superior Court, Guilford County, holding that BOT was liable

to pay just compensation for the taking of Lea Company's property. That judgment on the issue of liability was affirmed by the Court of Appeals, 57 N.C. App. 392, 291 S.E. 2d 844 (1982), and by this Court, 308 N.C. 603, 304 S.E. 2d 164 (1983).

The case was remanded to the Superior Court for a trial on the issue of damages. On 11 April 1985, the trial court found just compensation for the property taken to be $700,000, the difference in fair market value of the developed real property immediately prior to the taking by BOT and the value immediately after the taking that occurred on 1 September 1974. The trial court also determined that the plaintiff was entitled to compensation for the delay in payment during the time between the date of taking and the date of judgment awarding compensation for the property taken. The additional compensation for delay was measured "by interest on the amount of compensation to which plaintiff is entitled as of the date of the taking."

In determining the appropriate interest rate to use for measuring the additional amount to be awarded the plaintiff for delayed compensation, the trial court received evidence of interest rates which Lea Company had paid on borrowings on unsecured lines of credit and of interest rates Lea Company had received monthly from investments of surplus funds in repurchase agreements during the period from 1 September 1973 through 22 February 1985. The interest rates paid ranged from 6.75% to 21.00% and the interest received ranged from 6.75% to 19.625%. The weighted average was 12.56%.

The plaintiff's expert economist testified to various weighted monthly average rates of interest for a period from September 1974 through December 1984. The evidence of weighted monthly average rates considered by the trial court related to the following:

(1) Prime rates—the rates banks charge their best customers. (low, 6.25% in 3/77; high, 20.50% in 8/81; weighted average 11.50% from 9/74 to 12/84);

(2) Prime commercial paper—high quality commercial paper—borrowings and lendings of excess funds by leading, financially stable corporations in the market place. (low, 5.23% in 2/77; high, 18.07% in 12/80);

Lea Company v. N.C. Bd. of Transportation

(3) Long Term U.S. Government bonds—20 year series. Bonds of other maturities which have been adjusted, but are at constant maturity for 20 years, by the Treasury Department. (low, 6.61% in 2/75; high, 15.13% in 10/81);

(4) New Issue AAA Utility—new issues of the highest quality utilities coming out monthly (reporting ended December 1983; subsequent reporting of A-rated utilities at higher rate because of increased risk). (low, 8.04% in 8/77; high, 17.21% in 9/81);

(5) National Mortgage Contract Note—the weighted average of all conventional mortgage loans, developed by the Department of Housing and Urban Development. (low, 8.63% in 5/75; high, 15.68% in 11/81);

(6) FHLBB Series—the Federal Home Loan Bank Board series—rates of mortgage backed by the Federal Home Loan Bank Board. (low, 8.89% in 7/75; high, 16.38% in 11/81);

(7) HUD Series—rates of mortgages subsidized by the Department of Housing and Urban Development. (low, 8.80% in 1/77; high, 18.30% in 9/81); and

(8) Moody's Composite Index—yields on long-term AAA rated corporate bonds (through February, 1985). (low, 7.92% in 9/77, high, 15.49 in 9/81).

From the evidence received, the trial court found *inter alia* that: (1) as determined from Moody's Composite Index of Yields on Long-term Corporate Bonds, the approximate weighted average interest rate for the period September 1974 through February 1985 was 10.85% per annum; (2) the approximate weighted average prime interest rate for the period September 1974 through December 1985 was 11.51% per annum; (3) "a reasonable and prudent investor could have obtained an average interest rate for the period September 1974 through April 1985 of 11% per annum"; and (4) an interest rate of 11% per annum was a good and fair measure of the amount to be added to the plaintiff's award.

Based on those findings of fact, the trial court concluded *inter alia* that:

North Carolina General Statute § 136-113 providing for interest at the statutory legal rate from the date of the taking to the date of judgment does not provide plaintiff in this case with just compensation under the Constitution of the United States and the Constitution of North Carolina, because the statutory legal rate is less than the reasonable and just fair market rate of interest between the date of taking and the date of judgment, which is reflective of the cost value of the use of such interest in property or money substitute therefor.

North Carolina General Statute § 136-113 as applied to the facts of this case violates the Constitution of the United States and the Constitution of North Carolina.

The owner is entitled to such addition to the value at the time of the taking as will produce the full equivalent of such value had it been paid contemporaneously with the taking. Interest at the rate of 11% per annum is a good and fair measure of the amount to be added to make the award a full and adequate equivalent of the property taken.

Accordingly, the trial court awarded the plaintiff additional compensation in an amount equal to interest at 11% per annum for the time between the taking and the judgment awarding compensation. On 5 November 1985, we allowed the defendant's petition for discretionary review of the judgment of the trial court.

The defendant BOT concedes that Lea Company is entitled to additional compensation for delay in payment. The principle is long-standing that when the taking of property by the State precedes the payment of compensation, the owner is entitled to additional compensation for the delay in payment. *DeBruhl v. State Highway Commission,* 247 N.C. 671, 102 S.E. 2d 229 (1958). The fifth and fourteenth amendments to the Constitution of the United States and article I, section 19 of the Constitution of North Carolina require this additional payment as a part of just compensation. *Kirby Forest Industries, Inc. v. United States,* 467 U.S. 1, 81 L.Ed. 2d 1 (1984); *Shoshone Tribe v. United States,* 299 U.S. 476, 81 L.Ed. 360 (1937); *Jacobs v. United States,* 290 U.S. 13, 78 L.Ed. 142 (1933); *Phelps v. United States,* 274 U.S. 341, 71 L.Ed. 1083 (1927); *Seaboard Air Line Co. v. United States,* 261 U.S. 299, 67 L.Ed. 664 (1923); *Airport Authority v. Irvin,* 306 N.C. 263, 293 S.E. 2d 149 (1982); *DeBruhl v. Highway Comm.,* 247 N.C.

671, 102 S.E. 2d 229 (1958). "The additional sum awarded for delay in payment of the value for the property taken is not interest *eo nomine*, but interest is a fair means for measuring the amount to be arrived at of such additional sums." *Airport Authority v. Irvin,* 306 N.C. at 272, 293 S.E. 2d at 155.

BOT relies heavily on *DeBruhl* to support its argument that the statutory or "legal" interest rate of 8% per annum is a sufficient measure to satisfy the requirement of just compensation. This Court stated in *DeBruhl*:

> Ordinarily, the legal rate of interest, where the condemned property is located, upon the original sum fixed as compensation for the fair market value of the property on the taking date, is considered a fair measure of the amount to compensate the owner for the delay in paying the award, so as to make just compensation.

247 N.C. at 687, 102 S.E. 2d at 241. In response to this language in *DeBruhl*, the General Assembly in 1959 first enacted N.C.G.S. § 136-113 which now provides that:

> To said amount awarded as damages by the commissioners or a jury or judge, the judge shall, as a part of just compensation, add interest at the legal rate as provided in G.S. 24-1 on said amount from the date of taking to the date of judgment; but interest shall not be allowed from the date of deposit on so much thereof as shall have been paid into court as provided in this Article.

N.C.G.S. § 136-113 (Cum. Supp. 1985). At the time of the enactment of N.C.G.S. § 136-113, the legal rate of interest as provided by N.C.G.S. § 24-1 was 6% per annum. In 1979, the General Assembly raised the statutory rate to 8% per annum.

The issue before this Court is whether N.C.G.S. § 136-113, which in effect provides interest of 8% per annum as the measure to apply in calculating compensation for delay in payment, is constitutional as applied to the facts of the case *sub judice.* The trial court found the statute to be unconstitutional as applied and substituted an interest rate of 11% per annum. We affirm.

Our research has not uncovered any other North Carolina case in which a party has challenged the constitutionality of using

the statutory rate of interest as the measure of additional compensation for delay in payment in condemnation actions. *See generally*, Note, *Eminent Domain—Interest as an Element of Just Compensation*, 38 N.C. L. Rev. 89 (1959). Therefore, we are compelled to consider cases from other jurisdictions in resolving this issue of first impression.

When private property is taken for public use, the landowner is entitled to "the full and perfect equivalent of the property taken." *Seaboard Air Line R.R. v. United States*, 261 U.S. 299, 304, 67 L.Ed. 665, 669 (1923). In awarding just compensation for the property taken, "the owner shall be put in as good position pecuniarily as he would have been if his property had not been taken." *Id.; Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 81 L.Ed. 2d 1 (1984). "As a matter of just compensation and due process under the federal and state constitutions, a landowner cannot be denied interest on the unpaid part of the award during the time he is deprived both of the use of land and of the money representing its value." *Arkansas State Highway Comm. v. Vick*, 284 Ark. 372, 375, 682 S.W. 2d 731, 732 (1985). "This is true because he who pays $1.00 tomorrow to discharge a debt of $1.00 due and payable today, pays less than he owes." *United States v. Blankenship*, 543 F. 2d 1272, 1275 (9th Cir. 1976).

Since the ascertainment of just compensation is a judicial function and compensation for delay in payment is a part of just compensation, determining the amount of additional compensation for delay in payment is also a judicial function. *Seaboard Air Line R.R. v. United States*, 261 U.S. 299, 67 L.Ed. 664 (1923); *United States v. Blankenship*, 543 F. 2d 1272 (9th Cir. 1976); *Washington Metro Area T.A. v. One Parcel of Land*, 706 F. 2d 1312 (4th Cir. 1983); *Miller v. United States*, 620 F. 2d 812 (Ct. Cl. 1980); *Township of Wayne v. Cassatly*, 137 N.J. Super. 464, 349 A. 2d 545 (1975); *Matter of City of New York*, 58 N.Y. 2d 532, 462 N.Y.S. 2d 619, 449 N.E. 2d 399 (1983). *See generally*, Note, *Interest Rates in Eminent Domain: Is 6% Just Compensation in a 12% World?*, 12 Loyola L.A. L. Rev. 721 (1979).

Several jurisdictions have applied an interest rate set by statute if that interest rate satisfies the requirement that just compensation be paid for a taking. *E.g., Miller*, 620 F. 2d at 837; *Matter of City of New York*, 58 N.Y. 2d at 537, 462 N.Y.S. 2d at

621, 449 N.E. 2d at 401. "[T]he rate of interest set by a statute can be applied to a claim for just compensation if such rate is reasonable and judicially acceptable." *Miller*, 620 F. 2d at 837.

In *Matter of City of New York*, the court held that the legislature may fix a prima facie measure of the proper interest rate to be applied in condemnation proceedings. *Matter of City of New York*, 58 N.Y. 2d at 537, 462 N.Y.S. 2d at 621, 449 N.E. 2d at 401 (1983). The statutory rate is presumptively reasonable, but the landowner may rebut the rate's reasonableness by introducing evidence of prevailing market rates. The landowner must demonstrate that a higher interest rate for delay in payment is required as an integral part of just compensation. *Id.* The statutory rate will constitute a floor for the interest rate to be used in awarding additional compensation when the State delays its payment to the landowner. *See Washington Metro Area T.A. v. One Parcel of Land*, 706 F. 2d at 1322; *Miller*, 620 F. 2d at 839; *United States v. 319.46 Acres of Land*, 508 F. Supp. 288 (W.D. Okla. 1981).

[1] We adopt and apply in this case the foregoing guidelines set forth in *Matter of City of New York*. The General Assembly has enacted N.C.G.S. § 136-113 which provides for the legal rate as a prima facie rate to be imposed for delay in compensation. This statutory rate is deemed presumptively reasonable. However, the landowner may rebut the rate's reasonableness by introducing evidence of prevailing market rates and demonstrating that the prevailing rates are higher than the statutory rate.

Having decided that the landowner must be allowed to introduce evidence to rebut the presumption of reasonableness of the statutory interest rate, our inquiry turns to the question of what prevailing interest rates should be considered. The jurisdictions that have addressed this issue are not in complete agreement. Some have held that the proper interest rate to be applied is the rate applicable to other obligations of the government, a low-risk debtor. *United States v. Blankenship*, 543 F. 2d 1272 (9th Cir. 1976). However, we agree with the language in *Miller v. United States* that:

No reasonable investor would purchase an obligation with both an uncertain date of maturity and an uncertain amount of principal payment at maturity. Plaintiffs had their business property involuntarily converted into an extremely illiq-

uid claim against the United States. Since plaintiffs' options for other investments were effectively cut off, just compensation in this case should include payments for delay of compensation measured by the interest rates prevailing between the taking and payment dates. The Government, not the unwilling condemnee, should be the one to bear the risk of any fluctuations in interest rates.

620 F. 2d 812, 839 (Ct. Cl. 1980). *See also, Georgia Pacific Corp. v. United States*, 640 F. 2d 328 (Ct. Cl. 1980); *Pitcarin v. United States*, 547 F. 2d 1106 (Ct. Cl. 1976); *Redevelopment AG. of C. of Burbank v. Gilmore*, 38 Cal. 3d 790, 214 Cal. Rptr. 904, 700 P. 2d 794 (1985). We reject the view that interest rates on government obligations are the proper measure of just compensation.

The United States Court of Claims has utilized Moody's Composite Index of Yields on Long Term Corporate Bonds to establish binding rates applicable in all cases for particular calendar years. *Georgia Pacific v. United States*, 640 F. 2d 328 (Ct. Cl. 1980); *Miller v. United States*, 620 F. 2d 812 (Ct. Cl. 1980); *Tektronix, Inc. v. United States*, 575 F. 2d 832 (Ct. Cl. 1978); *Pitcarin v. United States*, 547 F. 2d 1106 (Ct. Cl. 1976). But commercial interest rates are in a constant state of flux and time periods differ in every condemnation case. The actual available rate of return will vary from case to case. Therefore, we decline to follow the Court of Claims in setting a standard interest rate applicable for particular years.

The remaining jurisdictions have considered a composite of interest rates on different types of securities. *E.g., United States v. 429.59 Acres*, 612 F. 2d 459 (9th Cir. 1980); *United States v. 319.49 Acres*, 508 F. Supp. 288 (W.D. Okla. 1981); *Township of Wayne v. Cassatly*, 137 N.J. Super. 464, 349 A. 2d 545 (1975); *Gilmore*, 38 Cal. 3d at 803, 214 Cal. Rptr. at 914, 700 P. 2d at 804. These jurisdictions have applied the "prudent investor" standard in determining the appropriate interest rate to be used in calculating additional compensation for delay. The test to consider is the rate which would have been earned by "a reasonably prudent person investing funds so as to produce a reasonable return while maintaining safety of principal." *Washington Metro Area v. One Parcel of Land*, 706 F. 2d 1312, 1322 (4th Cir. 1983); *429.59 Acres of Land*, 612 F. 2d 459 (9th Cir. 1980); *Gilmore*, 38 Cal. 3d at 803,

214 Cal. Rptr. at 913-14, 700 P. 2d at 804. "Since a prudent investor would diversify his interest portfolio, . . . the trial court should consider prevailing rates, during the period of delay, for investments of varying lengths and risk. Typically, these have included short, medium, and long-term government and corporate obligations." *Gilmore*, 38 Cal. 3d at 803, 214 Cal. Rptr. at 914, 700 P. 2d at 804.

[2]  We adopt the "prudent investor" standard. Accordingly, we hold that in cases of delayed payment, our trial courts shall consider any evidence introduced as to the prevailing interest rates for investments varying in length and risk during the period of delay. When such evidence is introduced the trial court shall consider it in arriving at an interest rate by which to calculate compensation for delay and to satisfy the right to just compensation for property taken for public use.

[3]  In order to promote the expeditious administration of justice, we elect to exercise the rarely used general supervisory powers given this Court in article IV, section 12(1) of the Constitution of North Carolina and choose to address two collateral issues not raised by the parties. *See State v. Stanley*, 288 N.C. 19, 215 S.E. 2d 589 (1975). The first is whether the trial court rather than the jury may determine the rate of interest. N.C.G.S. § 136-113 allows the trial court to add interest to the damages awarded as just compensation. We conclude that the trial court may determine the proper rate of interest and the amount to be added to the property owner's award to compensate for loss due to delay. The standard practice in North Carolina is to allow the trial court "to add interest based on the jury's verdict." *Airport Authority v. Irvin*, 306 N.C. 263, 274, 293 S.E. 2d 149, 157 (1982). "The sole function of the jury . . . [is] to find the amount of damages (compensation) to which the owner was entitled at the time the land was taken. All other matters of adjustment of award between the owner and the condemnor . . . [are] for the court." *Arkansas-Missouri Power Co. v. Hamlin*, 288 S.W. 2d 14, 18 (Mo. 1956).

[4]  The second collateral issue is whether compound interest rather than simple interest should be used in measuring the amount by which the award should be adjusted due to delayed payment. Several jurisdictions have allowed the imposition of compound interest. *United States v. 429.59 Acres*, 612 F. 2d 459

(9th Cir. 1980); *United States v. Blankenship*, 543 F. 2d 1272 (9th Cir. 1976); *United States v. 319.49 Acres*, 508 F. Supp. 288 (W.D. Okla. 1981); *United States v. 164.25 Acres*, 159 F. Supp. 728 (D.N.H. 1957); *United States v. Northern Pacific R.R. Co.*, 51 F. Supp. 749 (E.D. Wash. 1943).

In *DeBruhl*, this Court stated that "[i]n the absence of statutory authority, compound interest should not be awarded." *DeBruhl v. Highway Comm.*, 247 N.C. 671, 687, 102 S.E. 2d 229, 241 (1958). We decline to follow that language in *DeBruhl*, however, as the opinion in that case assumed that the statutory interest rate would always apply. Since this Court had now adopted the "prudent investor" standard, compound interest should be allowed for delayed payment in condemnation cases if the evidence shows that during the pertinent period the "prudent investor" could have obtained compound interest in the market place. The use of compound interest as a measure in calculating additional compensation for delay is a matter which will turn upon the evidence in each case and must be decided on a case-by-case basis.

We turn finally to the trial court's findings of fact and conclusions of law in the present case. From the record, it is evident that the trial court correctly applied the "prudent investor" standard and considered evidence of a proper composite of prevailing interest rates to arrive at an "average interest rate for the period of delay." The trial court's conclusions are supported by its findings of fact which are supported by substantial competent evidence. The judgment of the trial court is affirmed.

Affirmed.