CONCRETE MACHINERY COMPANY, INC., PLAINTIFF-APPELLEE v. CITY OF HICKORY, DEFENDANT-APPELLANT

No. COA98-1267

(Filed 6 July 1999)

### 1. Easements— sewer line rebuilt—partially outside existing easement—no writing

The trial court did not err by concluding that a taking had occurred in an action arising from the rebuilding of a sewer line partially outside the existing easement where the City contended that the property owner had orally agreed to relocate the sewer line. There was no written document or memorandum showing an alteration of the original easement or the creation of a new easement and no indication in the record that the City Council had authorized the relocation or abandonment of the easement.

## 2. Appeal and Error— appealability—interlocutory order— substantial right—not appealed immediately

In an action arising from the rebuilding of a sewer line partially outside the original easement, the court's conclusion that a taking had occurred affected a substantial right and the City was required to appeal within 30 days. The Court of Appeals nevertheless reviewed the issue in the interests of judicial economy and found it without merit.

## 3. Eminent Domain— interest—prudent investor—fourteen percent

The trial court did not err in an action arising from the rebuilding of a sewer line partially outside the original easement by awarding fourteen percent interest after concluding that a taking had occurred where the court determined the return a prudent investor would reasonably realize based upon an investment one-half in certificates of deposit and one-half in the stock market. The statutory rate is presumptively reasonable under the prudent investor standard, but the owner shall be put in as good a position as if the property had not been taken and may demonstrate that the prevailing rates are higher than the statutory rate. Plaintiff here introduced evidence indicating a reasonable rate of return between 7.2 percent and 28.8 percent, while the City offered no evidence.

## 4. Eminent Domain— interest—prudent investor—compound interest

The trial court did not err in an action arising from the rebuilding of a sewer line partially outside the original easement by awarding compound interest. Compound interest is warranted in condemnation cases if the evidence shows that the prudent investor could have obtained compound interest in the marketplace and the uncontradicted evidence here was that interest compounded annually could be realized by the prudent investor in today's financial markets.

## 5. Eminent Domain— interest—rate—date of judgment to satisfaction

The trial court erred in an action arising from the rebuilding of a sewer line partially outside the original easement by awarding fourteen percent interest compounded annually from the date of the taking to the time the judgment is satisfied. Awarding four-

teen percent interest after the date of judgment would be speculative and N.C.G.S. § 40A-53 specifically provides for interest in eminent domain actions from the date of judgment until its satisfaction at six percent.

**6. Eminent Domain— attorney fees—findings required**

The award of attorney fees in a condemnation was remanded where the court did not make the findings required by N.C.G.S. §§ 40A-8(b) and (c).

Appeal by defendant from judgment entered 18 May 1998 by Judge Marcus L. Johnson in Catawba County Superior Court. Heard in the Court of Appeals 10 June 1999.

*Hamel, Hicks, Wray & Brown, P.A., by William L. Sitton, Jr., Esq., for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Sara R. Lincoln and Jeffrey A. Doyle, for defendant-appellant.*

SMITH, Judge.

Plaintiff, Concrete Machinery Company, Inc. (CMC) is a private corporation located within the City of Hickory (City). City is a municipal corporation duly organized and existing under the laws of this state. The record tends to show that on 30 April 1959, (CMC) granted the City a permanent, 25-foot-wide easement for the purpose of constructing, maintaining, repairing and enlarging a sanitary sewer line. In late May 1996, the City discovered that sections of the sewer line within the permanent easement had collapsed and needed repair. The City contends that prior to beginning the repair work on the sewer line, CMC orally consented to a relocation of the pre-existing 1959 easement. CMC denies this contention.

The City rebuilt the sewer line between 4 June 1996 and 14 June 1996. The record indicates that the new sewer line location deviated from the pre-existing line by approximately 300 lineal feet, whereby approximately 275 lineal feet of the new sewer line was outside the 1959 easement. During construction of the new sewer line, the City stored sewer pipes, construction equipment and excavated contaminated soil on CMC's property. Additionally, CMC's use of its paved driveway and parking lot became "totally restricted" and the pavement was subsequently destroyed by the placement of the new sewer line and the operation of heavy construction equipment.

CMC submitted written quotes to the City for repair work in repaving the driveway and parking lot. The City, however, refused to pay for the repairs, and CMC filed this action pursuant to N.C. Gen. Stat. § 40A-51 (1984), alleging that construction of the new sewer line outside the boundaries of the 1959 easement constituted a taking under the fifth amendment to the United States Constitution, and Article I § 19 of the North Carolina Constitution. Following a hearing, the trial court determined that the City's construction of the new sewer line outside the boundaries of the 1959 easement constituted a taking as a matter of law, and ordered that damages be the sole issue to be determined by the jury at trial, as provided by N.C. Gen. Stat. § 40-47A (1984). A jury awarded CMC $97,903.00 in damages representing the value of the property taken for construction of the new sewer line. Finding that the jury had awarded compensation in this inverse condemnation, the trial court subsequently awarded $8,949.00 in expert and appraisal fees; $50,527.10 in attorneys' fees; and interest on the entire judgment at a rate of fourteen percent compounded annually until the judgment is satisfied. Defendant appeals.

On appeal, defendant brings forth the following assignments of error: (I) there was insufficient evidence to support the trial court's ruling that a taking had occurred; (II) the fourteen percent interest rate awarded by the trial court was unreasonable and contrary to North Carolina law; and (III), the attorneys' fees awarded to CMC were unreasonable and contrary to the laws of North Carolina.

I.

"Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal." *Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980).

The City assigns error to the trial court's determination that the placement of the sewer line outside the 1959 easement constituted a taking as a matter of law. The City's first assignment of error is based on two sub-issues.

[1] In the first sub-issue the City contends that CMC orally agreed to relocate the sewer line outside the 1959 easement. North Carolina law requires that contracts or deeds purporting to convey an easement be in writing. *Tedder v. Alford*, 128 N.C. App. 27, 493 S.E.2d 487 (1997), *disc. review denied*, 348 N.C. 290, 501 S.E.2d 917 (1998).

The North Carolina Statute of Frauds provides in pertinent part: 'All contracts to sell or convey any lands, tenements or heredita-

ments, *or any interest in or concerning them* . . . shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith.'

As an interest in land, *an easement is subject to the statute of frauds*. Thus, North Carolina law requires that a contract or deed purporting to convey an easement be in writing . . .[.] The burden of proving that a sufficient writing exists memorializing the conveyance of the easement is on the party claiming its existence.

*Id.* at 31, 493 S.E.2d at 489-90 (footnotes omitted) (emphasis added).

Further, "[a]ll contracts made by or on behalf of a City shall be in writing, and if not so written, shall be void and unenforceable." N.C. Gen. Stat. § 160A-16 (1994). In addition, the law provides that cities, as municipal corporations, are vested with all of the property and rights in property belonging to the corporation, whereby all powers, functions, rights, etc. of the corporation shall be exercised by the City council and carried into execution as provided by law. N.C. Gen Stat. §§ 160A-11 (1994), 160A-12 (1994), 160A-67 (1994). Thus, changes in use, or City action effectuating the sale or disposition of real or personal property belonging to the City can only be ordered or approved by the City council. N.C. Gen Stat. § 160-265 (1994).

Assuming *arguendo* that CMC did in fact orally consent to the modification of the 1959 easement, the oral agreement to relocate would nonetheless be unenforceable because the Statute of Frauds requires that the conveyance of all interests in real property be in writing. *See* N.C. Gen. Stat. § 22-2 (1986). Additionally, as an interest in real property, the purported relocation of the 1959 easement could have only been effectuated by action of the Hickory City council.

After reviewing the record, we find no written document or memorandum showing an alteration of the 1959 easement or the creation of a new easement. Similarly, there is no indication in the record that the City council authorized the relocation or abandonment of the 1959 easement. In fact, in oral argument before this Court, counsel for both the City and CMC acknowledged that the City council did not authorize relocation of the 1959 easement. Thus, the trial court's determination that the City abandoned the 1959 easement was in error. There being no evidence in the record of a valid modification or agreement to modify the 1959 easement, we find this sub-issue to be without merit and it is dismissed.

**[2]** Secondly, the City contends that the trial court erroneously concluded that the City's actions constituted a taking. Pursuant to N.C. Gen. Stat. § 40A-47 (1984), "the judge upon motion, shall hear and determine any and all issues raised by the pleadings other than the issue of compensation, including the condemnor's authority to take." Pursuant to N.C. Gen. Stat. § 40A-47, the trial court ruled on 30 March 1998, as a matter of law, that the City's placement of the new sewer line outside the 1959 easement constituted a taking. After the trial court determined there was a taking, it subsequently became the final law of the case. *Highway Commission v. Nuckles*, 271 N.C. 1, 155 S.E.2d 772 (1967). "A decision which disposes not of the whole but merely of a separate and distinct branch of the subject matter in litigation is final in nature and is immediately appealable." *Id.* at 13, 155 S.E.2d at 783. "Appeals in civil actions are governed by N.C. Gen. Stat. § 1-277, which permits an appeal from every judicial order involving a matter of law which affects a substantial right." *Id.* at 13, 155 S.E.2d at 783. For an interlocutory order to be immediately appealable under North Carolina law, it must: (1) affect a substantial right, and (2) work injury if not corrected before final judgment. *Id.* at 13, 155 S.E.2d at 783.

Our Supreme Court has adopted the definition of "substantial right" as: "a right materially affecting those interests which a man is entitled to have preserved and protected by law[.]" *Ostreicher v. Stores*, 290 N.C. 118, 130, 225 S.E.2d 797, 805 (1976). The trial court's determination that the City's placement of the sewer line outside the 1959 easement constituted a taking affected the defendant's substantial rights and was immediately appealable. It would be an act of futility and injurious to the interests of the City to otherwise compel it to proceed through trial on the issue of damages if the trial court's initial determination that a taking had occurred was in error.

In the case of the *Dep't of Transp. v. Rowe*, 131 N.C. App. 206, 505 S.E.2d 911 (1998), *disc. review allowed*, 350 N.C. 93, —— S.E.2d —— (1999), this Court held that interlocutory orders which effect a substantial right of the defendant require an immediate appeal of the order. Pursuant to N.C.R. App. P. 3(c), "[a]ppeal from a judgment or order in a civil action or special proceeding must be taken within 30 days after its entry." "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

CONCRETE MACHINERY CO. v. CITY OF HICKORY

[134 N.C. App. 91 (1999)]

In *Rowe*, this Court held that a City has thirty days after the trial court's order determining that a taking has occurred in which to file its appeal. *Rowe* at 209-10, 505 S.E.2d at 914. This, however, was not done in the instant case. Instead, the City proceeded to trial on the issue of damages and did not file an appeal of the 30 March 1998 order until 18 June 1998, a date after the trial on damages had already taken place. "The Rules of Appellate procedure are mandatory and failure to follow the rules subjects an appeal to dismissal." *Wiseman v. Wiseman*, 68 N.C. App. 252, 255, 314 S.E.2d 566, 567-68 (1984). Further, this Court is bound by our earlier decision in *Rowe* and our Supreme Court's ruling in *Nuckles*. *See In the Matter of Appeal from Civil Penalty*. Thus, because the City failed to file an appeal from the 30 March 1998 interlocutory order within the thirty-day filing date as required by law, the City is precluded from raising the issue on appeal.

Notwithstanding this however, pursuant to N.C.R. App. P. 2, and in our supervisory powers under N.C. Gen. Stat. § 7A-32(c) (1986), in the interest of judicial economy, and because we are aware that our Supreme Court has allowed discretionary review in *Rowe*, we have reviewed the record on appeal and find this sub-issue to be meritless. Thus, defendant's first assignment of error is dismissed.

II.

[3] In its second assignment of error, the City contends the trial court erred in awarding fourteen percent interest compounded annually from the date of the taking to the date of satisfaction of the judgment. Because we have determined that the record supports the trial court's determination that the City's placement of the new sewer line outside the 1959 easement constituted a taking without prior payment of compensation, CMC is entitled to additional compensation for the delay in payment as required by the fifth and fourteenth amendments to the Constitution of the United States and Article I, section 19, of the Constitution of North Carolina. U.S. Const. amend. V; U.S. Const. amend. XIV; N.C. Const. art. I, § 19; *Lea Company v. N.C. Bd. of Transportation*, 317 N.C. 254, 345 S.E.2d 355 (1986).

The trial court in a condemnation case is required to add interest to the amount awarded as damages as part of just compensation from the date of the taking to the date of judgment. N.C. Gen. Stat. § 40A-53 (1984). However, under the "prudent investor" standard adopted by our Supreme Court, although the statutory rate is to be regarded as presumptively reasonable, in awarding just compensa-

tion for property taken, "the owner shall be put in as good posi-
tion . . . as he would have been if his property had not been taken, and
thus, the landowner may rebut the rate's reasonableness by introduc-
ing evidence of prevailing market rates and demonstrating that the
prevailing rates are higher than the statutory rate." *Lea* at 258, 345
S.E.2d at 357, *quoting Kirby Forest Industries, Inc. v. United States*,
467 U.S. 1, 104 S. Ct. 2187, 81 L. Ed. 2d 1 (1984). Under this standard,
the trial court is to consider "prevailing rates, during the period of
delay, for investments of varying lengths and risk [which] typically
[include] short, medium, and long-term government and corporate
obligations." *Lea* at 262-63, 345 S.E.2d at 360, *quoting Redevelopment
AG. Of C. of Burbank v. Gilmore*, 38 Cal.3d 790, 214 Cal. Rptr. 904,
700 P.2d 794 (1985).

CMC introduced evidence indicating that the reasonable rate of
return for investments from 4 June 1996 to the time judgment was
entered, ranged between seven and two-tenths percent and twenty-
eight and eight-tenths percent. *Lea* at 261, 345 S.E.2d at 359. The City
offered no evidence as to what a reasonable prudent investor would
have earned as a return or prevailing rate from the date of the taking
through the date judgment was entered.

The trial court subsequently determined that with approximately
one-half of an investment in interest-bearing certificates of deposit at
a rate of return between seven and eight percent, and the remaining
one half in the stock market at a rate of return of twenty percent, the
prudent investor would reasonably realize a return of fourteen per-
cent. Based upon the record and without evidence to the contrary, we
conclude that the fourteen percent awarded by the trial judge is a fair
and reasonable rate of return that would be realized by the prudent
investor.

[4] A second collateral issue is whether the trial court was correct in
awarding *compound interest* rather than simple interest as a means of
compensating CMC for the delay in payment resulting from the tak-
ing. In adopting the prudent investor standard, our Supreme Court
held that compound interest is warranted in condemnation cases if
the evidence shows that from the time of the taking to the date of
judgment, the prudent investor could have obtained compound in-
terest in the marketplace. *Id.* at 264, 345 S.E.2d at 361. CMC's uncon-
tradicted evidence indicated that interest compounded annually
could be realized by the prudent investor in today's financial markets.
"The use of compound interest as a measure in calculating additional

CONCRETE MACHINERY CO. v. CITY OF HICKORY

[134 N.C. App. 91 (1999)]

compensation for delay is a matter which will turn upon the evidence in each case and must be decided on a case by case basis." *Id.* at 264, 345 S.E.2d at 361. Because the record supports the trial court's determination that compound interest could be realized by the prudent investor, the trial court did not err in awarding compound interest.

**[5]** The trial court was in error, however, in awarding fourteen percent interest on the judgment to accrue from the date of taking up to the time the judgment is satisfied. To award fourteen percent interest as a rate of return after the date of judgment would be speculatory and inconsistent with the detailed actual rate analysis required by *Lea. See Id.* at 254, 345 S.E.2d at 355. Though we are aware that N.C. Gen. Stat. § 24-5(b) (1991) might be construed as allowing interest at the legal rate until the judgment is satisfied, N.C. Gen. Stat. § 40A-53 specifically provides for interest in eminent domain actions from the date of judgment until its satisfaction at the rate of six percent per annum.

III.

**[6]** Lastly, the City assigns error to the trial court's award of attorneys' fees. Regarding attorneys' fees, the pertinent North Carolina General Statute provides in pertinent part:

(b) If a condemnor institutes a proceeding to acquire by condemnation any property and (i) if the final judgment in a resulting action is that the condemnor is not authorized to condemn the property, or (ii) if the condemnor abandons the action, the court with jurisdiction over the action shall after making appropriate findings of fact award each owner of the property sought to be condemned a sum that, in the opinion of the court based upon its findings of fact, will reimburse the owner for: his reasonable costs; disbursements; expenses (including reasonable attorney, appraisal, and engineering fees); and, any loss suffered by the owner because he was unable to transfer title to the property from the date of the filing of the complaint under N.C. Gen. Stat. § 40A-41.

(c) If an action is brought against a condemnor under the provisions of N.C. Gen. Stat. § 40A-20 or N.C. Gen. Stat. § 40A-51 seeking compensation for the taking of any interest in property by the condemnor and judgment is for the owner the court shall award to the owner as a part of the judgment after appropriate finding

of fact a sum that, in the opinion of the court based upon its finding of fact, will reimburse the owner as set out in subsection (b).

N.C. Gen. Stat. § 40A-8(b)(c) (1984).

The award of attorneys' fees under the statute providing for such an award to the prevailing plaintiff in inverse condemnation cases is within the sound discretion of the trial judge and is not reviewable except for abuse of discretion. *Lea Co. v. N.C. Board of Transportation*, 323 N.C. 691, 374 S.E.2d 868 (1989). However, the award of attorneys' fees is not to be arbitrarily determined.

> It is well settled that the judicial determination of reasonable attorney fees in an eminent domain action does not depend solely upon hourly rates and the number of hours devoted to the case. Accordingly, after initial analysis calculating the attorney services in terms of time the attorneys actually spent on the case, the court should then examine such factors as the nature of litigation . . . nature of the award, difficulty, amount involved, skill required in its handling, skill employed, attention given, [and] the success or failure of the attorney's efforts.

McQuillin Mun Corp § 32.96 (3rd Ed).

In the case before us, the trial court awarded what it deemed to be "reasonable" attorneys' fees, and such fees are permitted pursuant to the statute. The trial court failed, however, to make any findings of fact as required by the statute. As N.C. Gen. Stat. § 40A-8(b) and (c) mandate findings of fact, we remand to the trial court for entry of appropriate findings of fact to support any award of attorneys' fees.

Though neither party has raised the issue, we note that N.C. Gen. Stat. § 40A-54 (1984) requires that judgments under said statute be recorded in the registry of the county where the land is situated. We are unable to determine from the record that this has been done. On remand the trial court should further ascertain compliance with said statute, and if necessary provide therefor.

In summary, we conclude that the issue relating to placement of the sewer line outside the boundaries of the 1959 easement and whether that constituted a taking is not appealable because the notice of appeal was not filed timely. However, after reviewing the record pursuant to N.C.R. App. P. 2 and N.C. Gen. Stat. § 7A-32(c), we find no error in the trial court's determination that a taking occurred. Further, the trial court's judgment that the City abandoned the 1959

easement is reversed. We also hold fourteen percent interest is a reasonable rate of return for a prudent investor and that the fourteen percent interest compounded annually is to be added to the value of the land taken from the date of the taking to the date of judgment. An interest rate of six percent per annum is to be added to the judgment from the time of entry of judgment to the time when the judgment is satisfied. Finally, we hold that the award of $50,527.10 in attorneys' fees is remanded for findings of fact and conclusions justifying the reasonableness of any attorneys' fees awarded as is required by statute.    .

No error in part, reversed in part and remanded.

Judges WALKER and EDMUNDS concur.